41 365
51a 538
41 365
55a 265

# JAMES H. REESE

*v.*

# JOHN G. MITCHELL.

CHATTEL MORTGAGE — *default* — *days of grace.* Prior to the passage of the act of 1861, notes in this State were not entitled to days of grace ; and the cus tom of giving days of grace by a portion of the business community did not change the law, nor was any one bound by such a usage. The act of 1861 did not apply to or govern notes previously given, but only controlled notes sub- sequently executed ; *Held,* that a mortgagee of personal property was in default in not reducing it to possession without delay on a default in the payment of the note on the day specified. It not having days of grace, the mortgagee could not allow them to the mortgagor, as to creditors or subsequent purchasers. It is fraudulent as to creditors and purchasers to permit such property to remain in the hands of the mortgagor two days after the maturity of the mort- gage debt, where the parties reside in the same town or county, and no obsta- cle prevented him from reducing it. to possession.

APPEAL from the Superior Court of Chicago.

This was an action of replevin brought by James H. Reese, in the Superior Court of Chicago, to the December Term, 1860, against John G. Mitchell, for the recovery of a number of arti- cles of personal property. The declaration was in the usual form, for taking and unlawfully detaining the goods. Defend- ant filed a plea of *non detinet,* and a plea of property in the defendant. On these pleas issue was joined. And the cause was, at the February Term, 1865, submitted to the court for trial, without the intervention of a jury, by consent of parties.

It was admitted in the court below that plaintiff claimed the property in dispute under a chattel mortgage dated the 14th of November, 1859, by Thomas Sim, to plaintiff, to secure $680.50, due one year after date. That the mortgage provides that the mortgagor might retain possession of the property, until he should make default in the payment of the money.

That defendant claimed the property under a levy made by him as a constable, by virtue of executions from the docket of a justice of the peace, against Sim. That the levy was made

on the 16th day of November, 1860, two days after the day named in the note and mortgage for the payment of the money.

It was agreed that no exceptions should be taken to the pleadings, but they were to be treated in all respects as regular and proper. The property was household furniture, and part of the same named in the mortgage. That it was duly demanded before the suit was brought. The judgments upon which the executions issued and the mortgage, were admitted to be regular and valid.

That the question to be determined was whether the mortgagee was guilty of laches in failing to take possession of the goods before the time of the levy, or the property was subject to levy under the executions.

The note and mortgage and also the executions and levies were introduced in evidence. Plaintiff introduced evidence that among bankers and business men at Chicago, days of grace were allowed on promissory notes.

The court found the issues for the defendant. Plaintiff then entered a motion for a new trial, which was overruled by the court and exception taken. The court thereupon rendered judgment in favor of the defendant, and that he have return of the property. To reverse that judgment plaintiff prosecutes this appeal and assigns the rendition of the judgment for error.

Mr. GEO. W. THOMPSON, for the appellant.

Mr. OBADIAH JACKSON, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of replevin brought by James H. Reese, in the Superior Court of Chicago, against John G. Mitchell, for the recovery of various articles of personal property. A trial was had by the court, a jury having been waived by the parties. The court found the issues for the defendant; a motion for a new trial was entered and overruled by the court;

and judgment was rendered according to the finding. The cause is brought to this court by appeal.

Appellant claims the property in controversy under a chattel mortgage executed by Thomas Sim, to secure the payment of a promissory note given by him to appellant for $680.50, due one year after date, and bearing date on the 14th of November, 1859. The mortgage purports to have been executed at the same time, and contains a provision that, upon the payment of the note, the mortgage should be void. It also provided that Sim should hold and retain possession of the property, at his expense, until he should make default in the payment of the note.

Appellee seized the property under two executions in his hands as a constable, which had been issued by a justice of the peace against Sim, the mortgagor. One was in favor of Joshua Thomas, and the other in favor of Simeon Hieshbach. The levies were made on the 16th of November, 1860, two days after the maturity of the note.

By an agreed statement in writing, the following were admitted as facts on the trial, viz.: "That the property levied upon is part of the mortgaged property. That Sim, at the time of the levy, was housekeeping, with his wife and children, in the south part of the city of Chicago. That the mortgage covered nearly all the necessary household furniture and property of said Sim in daily family use. That said Sim was then in active practice as a physician and surgeon in the city of Chicago, and that the mortgage also covers the medical and surgical books, implements and furniture of said Sim then in use by him in his practice. That the plaintiff resided at Lake View, a different town from that in which Sim resided, being about seven miles apart, but that the plaintiff had an office and did business in the city of Chicago, and that Sim and plaintiff married sisters. It was further stipulated, that the question to be tried in the case was, whether the plaintiff was guilty of *laches* in not taking possession of the mortgaged property before the time of the levy by the defendant, or whether, under all the circumstances of this case, the property

was subject to said executions by reason of possession not having been taken of said goods by the plaintiff, as mortgagee, before the levy — to establish which issue the plaintiff should be at liberty to introduce any competent proof, and the defend-ant to rebut the same by competent evidence."

Appellant claims, that, by the law and usage of business men, notes of this character, at the time of their maturity, are entitled to days of grace. And that the note was, therefore, not due until the 17th, and the maker 'was not in default in payment, or the mortgagee in taking possession at the time the levy was made. Whatever may have been the usage of bankers and a portion of the business community, the custom of allowing days of grace did not obtain among the great majority of the people in our State. Nor has the statute or the decisions of our courts declared that such a rule obtained, prior to the act of February, 1861. But on the contrary, the decisions of this court had announced a different rule. In the case of *Walter* v. *Kirk*, 14 Ill. 55, the note was assigned on the day named for its payment, which was the 1st of November, and it was held to have been assigned before it was due. But the court say: "The maker had the whole of the day on which it was indorsed in which to make payment. He was not in default until the day had expired. An action could not have been maintained on the note until the 2d day of November. A suit on the previous day would have been dismissed, because prematurely brought." It is true, that the question was only incidentally presented in that case.

· The precise question, however, was presented to the court in the case of *Elston* v. *Dewes*, 28 Ill. 436. It was there held, that days of grace did not exist as a right, prior to the passage of the act of 1861, so far as it related to promissory notes. The fact that days of grace were given on bills of exchange, does not affect the question, as that rule obtained under the law merchant, and only as to commercial paper. But promis-sory notes only became negotiable by force of the statute, and it failed to give days of grace when it authorized them to be assigned. Under the common law, they partook of few, if any,

of the characteristics of commercial paper, and were certainly not entitled to days of grace.

The act of 1861 was not adopted to control an existing right, but to confer one that had not previously existed. Nor does the expression of the act, "usual days of grace," refer to days of grace already allowed on promissory notes. No such days of grace existed; and if they had, it would have been supererogation to enact a law already in existence. The usual days of grace referred to, are such as were, by the law merchant, throughout the commercial world, allowed on bills of exchange. By that usage three days are uniformly given on bills of exchange, and by legislative enactment of most of the States of the Union, the usage is the same on all instruments to which it applies. The note in this case was not entitled to days of grace.

The note then having fallen due on the 14th day of November, and the money not having been paid, the mortgagor was in default. And the property still being in his possession on the 16th of November, the mortgagee was guilty of *laches* in not reducing it to possession. It has been uniformly held by this court, ever since the decision of *Thornton* v. *Davenport*, 1 Scam. 296, which is the leading case of this court, that the possession of personal property contrary to the terms of the mortgage, marriage settlement or limitation over, is fraudulent *per se* against purchasers and creditors. And in the cases of *Reed* v. *Eames*, 19 Ill. 595; *Frink* v. *Staats*, 24 id. 633; *Thompson* v. *Yeck*, 21 id. 73, and *Cross* v. *Perkins*, 23 id. 382, it was held, that suffering personal property to remain with the mortgagor, after making default in payment, is a fraud on creditors and purchasers. And in the first two of these cases, it was held to be incapable of explanation. In the case of *Reed* v. *Eames*, it was said, that when parties live in the same town or county, one day after default would be a reasonable time within which to take possession; and that what is a reasonable time must be determined by the situation of the parties, their vicinity and facilities for intercourse.

In the case of *Cross* v. *Perkins*, it was said, that, under some.

24—41st Ill.

circumstances one day might be reasonable, whilst under others, it might be unreasonable ; that no general rule could be established, but that the mortgagee must act with promptness, and must use every reasonable effort to reduce the property into his immediate possession after a default has occurred.   In this case the parties lived in the same county and but a few miles apart, and we do not see a single circumstance that would have prevented the mortgagee from obtaining the property during the fifteenth of November.   Nor does it appear that he made the slightest effort in that direction, either by himself or an agent. He was, therefore, guilty of *laches,* and after the default the possession by the mortgagor was fraudulent as to creditors. The court below was therefore fully warranted in finding for the defendant below, and the judgment is affirmed.

*Judgment affirmed.*