IRVIN DUNLAP

*v.*

EPLER & CALLON.

1. CHATTEL MORTGAGE—*failure to take possession at time limited.* If mortgaged chattel property is suffered to remain in the possession of the mortgagee beyond the time limited in the mortgage for his possession, it renders the mortgage fraudulent and void as to execution creditors of the mortgagor.

2. SAME—*construed as to right of possession, as between mortgagor and mortgagee.* A chattel mortgage, given to indemnify a surety, provided in the condition that if the mortgagor should pay the note executed by him and the mortgagee to the payee by a day named, or pay whatever the surety might be obliged to pay, with interest, and if, in other respects, he should keep the surety harmless, etc., the same should become void, and that the mortgagor might retain possession of the chattels "until the day of payment, as afore-

said," and "at the expiration of said time of payment," if the note was not paid, etc., he should deliver possession: *Held,* that the mortgagor was only entitled to retain possession until the day named for payment in the condition, and if retained after that time the property was liable to be taken on execution against him. Such a mortgage does not give the mortgagor the right to hold possession until the mortgagee is damnified as surety.

3. SAME—*provision as to holding possession against mortgagee who is only surety.* A chattel mortgage given to a surety of the mortgagor upon a note, may well provide that on failure of the mortgagor to pay the note at maturity, the mortgagee, without having suffered anything from his suretyship, may immediately take possession of the property, and appropriate it to the payment of the note, and if it does so provide, possession must be taken accordingly, or the property becomes liable to execution against the mortgagor.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. WILLIAM H. BARNES, for the appellant.

Messrs. DUMMER, BROWN & RUSSELL, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of replevin for certain goods and chattels, by Epler & Callon, against Dunlap, wherein the plaintiffs recovered, and the defendant appealed.

The property in question was mortgaged property, the controversy being between the mortgagees in a chattel mortgage thereof, plaintiffs, and the sheriff, defendant, who had taken the same by virtue of an execution against the mortgagor, one McLaflin. The only question raised is, whether the mortgagees were in default in not taking possession of the mortgaged property under their mortgage.

The mortgage from McLaflin to Epler & Callon bears date December 17, 1874, recites as its consideration that Epler & Callon had, that day, signed, as sureties for McLaflin, a promissory note to one Neely, of that same date, and due six months after date, for the sum of $2460.70, with interest, at ten per cent per annum, after date, till paid, and conveys the property with this proviso:

" *Provided,* that if the said Edward McLaflin shall, on or before the 17th day of June, 1875, pay or cause to be paid to said Neely the sum of $2460.70, with interest at ten per cent per annum, from December 17, 1874, according to the tenor of said promissory note, or whatever sum of money said Epler & Callon may be obliged to pay by reason of said default and in consequence of signing said note as sureties, with ten per cent interest, until paid back to them, and if in other respects he shall save, indemnify and keep harmless the said parties of the second part from any loss or damage by reason of signing said note, and keep said property safely insured to $3000, that then these presents shall be void: *Provided, also,* that said Edward McLaflin may retain the possession of and have the use of said goods and chattels until the day of payment aforesaid, and also at his own expense to keep said goods and chattels, and also at the expiration of said time of payment, if said sum of money, with interest, shall not be paid, or said parties of the second part fully indemnified, to deliver up said goods in good condition to said Epler & Callon, or their attorneys: *And, provided, also,* that if default in payment, as aforesaid, by the party of the first part, shall be made, or if the parties of the second part shall feel themselves unsafe, they shall have the right to take possession of said goods wherever they may be found, and sell the same, at public or private sale, to the highest bidder, for cash, after notice, etc., and proceed to make the sum of money and interest," etc.

The execution issued on the first day of October, 1875, against the mortgagor, for the sum of $652.50, was on the same day placed in the sheriff's hands, and on the 12th day of November, 1875, was by him levied on the property upon the premises of the mortgagor, where it had remained ever since the making of the mortgage.

There is no pretence of any attempt by the mortgagees to obtain possession of the property before the 8th of November, 1875. The execution bound the property of the goods and chattels from the time it came into the hands of the sheriff,

October 1, 1875, if they were subject to the execution, and that depends upon whether the retention of the possession by the mortgagor was in accordance with the provision in that respect in the mortgage. Under our Chattel Mortgage act, such a mortgage, duly made, acknowledged and recorded, is good and valid for a space of time not exceeding two years, notwithstanding the property mortgaged may be left in possession of the mortgagor, if the mortgage shall provide for the possession of the property so to remain with the mortgagor. The decisions of this court are numerous, that if the mortgaged property be suffered to remain in the possession of the mortgagor beyond the time limited in the mortgage for his possession, it renders the mortgage fraudulent and void as to creditors.

All this is conceded by appellees, but they insist there has been here no breach of the condition of the mortgage, and will not be, until the sureties (the mortgagees) are damnified—that is, compelled to pay something on the note; that the failure of the mortgagor to pay the note on the day it fell due, did not damnify the mortgagees; and that the proper construction of the mortgage is, that the mortgagor might retain the possession of the property until such a breach of the condition, as thus claimed, except the possession not to exceed two years.

Looking at the first clause, alone, of the condition, it lends some countenance to appellees' position. The point is not, exactly, what is a breach of the condition of the mortgage, but what is the time provided in the mortgage that the possession of the property may remain with the mortgagor. The provision in that respect is, that the mortgagor may "retain the possession of and have the use of said goods and chattels until the day of payment aforesaid," and " also, at the expiration of said time of payment,  *  *  *  to deliver up said goods," etc. But one " day of payment, aforesaid," and " time of payment," is to be found in the mortgage, and that is the day of the maturity of the note, viz: June 17, 1875. The last clause of the condition provides, that if default in payment, as afore-

said, by the party of the first part, shall be made, the mortgagees "shall have the right to take possession of said goods," and sell the same at public or private sale to the highest bidder, for cash, and proceed to make the sum of money and interest.

Can there be any question that, under this clause, if the mortgagor had failed to pay the note as first provided in the condition, on the 17th day of June, 1875, the mortgagees might then immediately have taken and sold the property for the satisfaction of the debt? They might well intend and stipulate, that on the failure of the mortgagor to pay the note at maturity, they, without first having suffered anything from their suretyship, might immediately take possession of the property, and appropriate it to the payment of the note. We think they have done so here; that the words, "default in payment, as aforesaid," in this last clause, are to be taken as referring to the payment by the mortgagor of the note at its maturity, on the 17th day of June, 1875; that they harmonize in this respect with the words, "day of payment, aforesaid," "time of payment;" precedently used for limiting the time of the retaining and surrendering up the possession of the property by the mortgagor; that they all relate to the payment of the note by the mortgagor at its maturity, June 17, 1875.

That, then, being the time provided in the mortgage for the retention of the possession of the property by the mortgagor, his retaining it after that time avoided the mortgage as against the execution creditor, and the property in the goods should have been found to be in the sheriff, the defendant.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*