## ATCHISON v. GRAHAM.

1. CHATTEL MORTGAGE — CONSEQUENCES OF FAILURE OF THE MORT-
GAGEE TO TAKE POSSESSION ON DEFAULT OF PAYMENT.— After de-
fault in payment of a debt secured by a chattel mortgage the rela-
tions of the mortgagee to the property and the rights of creditors
and subsequent purchasers in good faith are to be defined and
determined by the principles applicable to the relation between
vendees and creditors upon a sale of personal property.   The mort-
gagee must take actual possession of the mortgaged property,
and the possession must be open, notorious and unequivocal, such
as to apprise the community, or those who are accustomed to deal
with the party, that the goods have changed hands, and that the
title has passed out of the mortgagor.   Otherwise the property
will be subject to levy and sale for the debts of the mortgagor,
and to the rights of subsequent purchasers in good faith.

2. SAME — THE STATUTE DOES NOT AUTHORIZE THE MORTGAGOR TO
RETAIN POSSESSION FOR TWO YEARS UNLESS SO SPECIFIED IN THE
MORTGAGE.— The statutory provision that the mortgage shall be
"good and valid from the time it is so recorded, for a space of
time not exceeding two years, notwithstanding the property mort-
gaged  *  *  *  may be left in the possession of the mortgagor,"
does not authorize it to be retained by the mortgagor for that period
of time unless it be so stipulated in the mortgage.   Suffering mort-
gaged property to remain in possession of the mortgagor after de-
fault in payment is a fraud *per se*, and renders the mortgage void
as to creditors both under the chattel-mortgage act and the statute
of frauds.

## *Appeal from Superior Court of Denver.*

Mr. A. B. McKINLEY, for appellant.

Messrs. STEELE & MALONE, for appellee.

PATTISON, C.   This is an action of replevin, brought
by appellant to recover certain personal property of which
she claimed ownership and right of possession.   The
facts out of which the litigation arose, briefly stated, are
as follows:

September 6, 1884, appellant, through the agency of
one E. J. Adams, loaned H. E. Kinney and George V.
Horne, who were then doing business as copartners, the

sum of $840. On that day they gave their promissory note for that sum, payable three months after date, at the rate of three and one-half per cent. per month from date until paid. To secure the payment of the note they made, executed and delivered to Adams a chattel mortgage upon certain personal property, consisting of horses, harness, carriages, etc., then in their possession at the Kentucky Livery Stables in this city.

The chattel mortgage contained the usual covenants, among which was the following: "We will well and truly pay, or cause to be paid, the said promissory note * * * when the same shall become due and payable, without days of grace. * * *" It was also provided that, until default "in the keeping or performance of some one or more of the conditions, covenants or agreements above, herein or hereinafter mentioned, the said parties of the first part may keep, retain and use the said property, goods and chattels." Upon default the mortgagee was authorized to take immediate and full possession of the property.

Immediately after the note and mortgage were made they were transferred by Adams to appellant. The property remained in the possession of the mortgagors, and was used by them in their business, until December 6, 1884. In the evening of that day, Thomas Atchison, the husband of appellant, accompanied by Adams and one Brandt, went to the livery-stables of the mortgagors and demanded payment of the note. The note not being paid, Atchison, as agent of appellant, undertook to take possession of the property under the mortgage. No objection was made to the proceeding by the mortgagors. Accompanied by them, Atchison and Adams went through the stables, identifying the property described in the mortgage, and placing the same in charge of Brandt as custodian, with instructions that he should not permit the property to be taken from the stables. The property was not separated from other property belonging to the

mortgagors, nor was its position changed in any respect. Atchison and Adams then left the stables, and Brandt remained as the representative of appellant.

On Monday, December 8th, the mortgagors confessed a judgment in favor of one Suydam for the sum of $1,474. The same day an execution upon the judgment confessed was issued and delivered to appellee or his deputy, A. H. Weber. Weber, upon the receipt of the execution, and at about 5 o'clock in the afternoon, went to the stables of the judgment debtor for the purpose of levying the execution. When he reached the stables he began to execute the process by making a list and inventory of the property in the usual form. While he was engaged in making the levy, he was informed by Brandt that the property was in his possession as agent of the mortgagee, and the mortgage itself was then and there exhibited to him. He thereupon proceeded no further with the execution of the process. Subsequently, having secured indemnity, he returned, and levied the execution upon the mortgaged property in the usual way. After the levy had been perfected, appellant caused demand to be made for the delivery of the property, and upon refusal brought this action.

The complaint is in the usual form. The answer put in issue the allegations of the complaint, and, for a second defense, justified the taking under the execution issued upon the judgment as above stated. A replication was filed, and upon these issues the cause was tried to the court, and judgment rendered for defendant. Motion for a new trial was made and granted. Before the trial an amended answer was filed by defendants, setting up as a further defense to the action that the mortgage was invalid, because, at the time it was made, a contract was entered into between the mortgagors and the mortgagee, by the terms of which the mortgagors were authorized, in effect, to sell the property mortgaged, and apply the whole or some part of the proceeds

to their own use. The allegations of the amended answer were put in issue by further replication by appellant.

In November, 1885, a second trial was had before the court without a jury, which trial resulted in a second judgment against appellant, from which this appeal was taken.

The sole question presented to this court is whether the judgment of the court below is sustained by the evidence. In considering this question, the defense interposed by the amended answer will be ignored, for the reason that there is no evidence which shows, or tends to show, that the mortgagors were to sell the mortgaged property. The discussion will be confined to the simple question whether, after default in the payment of the note, there was an actual delivery and change of possession of the property, within the meaning of the law, as settled by this court.

That the note given by the mortgagors matured December 6th, there can be no question. Days of grace were expressly waived by the provisions of the mortgage itself. That days of grace may be waived is elementary. 3 Rand. Com. Paper, § 1057. Failure to pay the note, therefore, upon that day, was a breach of the condition of the mortgage, which entitled the mortgagee to take immediate possession of the mortgaged property.

The question presented is whether the appellant actually took possession of the property, within the meaning of the chattel-mortgage act and the statute of frauds of this state, as interpreted and construed by this court. The rights and duties of mortgagees under the chattel-mortgage act of this state have never been fully defined by this court. It is an elementary principle that "a chattel mortgage at common law is void against creditors, unless accompanied by an actual delivery of the property to the mortgagee." Jones, Chat. Mortg. § 176. This principle of the common law has been adopted as a part of the statute law in this state. Section 163 of the

General Statutes provides that "no mortgage on personal property shall be valid as against the rights and interest of any third person or persons unless possession of such personal property shall be delivered to and remain with the mortgagee, or the said mortgage be acknowledged and recorded as hereinafter directed." Registry of the mortgage is, by this section, made a substitute for the delivery and change of possession of the property. Under this provision, personal property mortgaged may remain in the possession of the mortgagor, if the mortgage so provides, and it is acknowledged and recorded in accordance with the statute.

It is claimed by appellant that, under section 165, the mortgagor may retain possession of the property for the full period of two years, because that section declares that such a mortgage shall be "good and valid from the time it is so recorded, for a space of time not exceeding two years, notwithstanding the property mortgaged or conveyed by deed of trust may be left in the possession of the mortgagor." This construction of the language quoted cannot prevail. The time during which the property was to remain in the custody and possession of the mortgagor is in this case fixed and determined by the mortgage itself, and the rights of the parties, in this respect, are defined by the mortgage and not by the statute. The mortgage provides that the property shall remain in the possession of the mortgagors until default in payment or the maturity of the debt. Under the chattel-mortgage act, the property may remain with the mortgagor for the period "that such conveyance shall provide for the property so to remain," but in no event can the mortgagor retain possession of the property more than two years.

The statute now under discussion is that which was in force at the time the mortgage in question was made. By the amendment of 1887 it is provided that such mortgage shall "be good and valid from the time it is so re-

corded until the maturity of the last instalment of the mortgage indebtedness, but not exceeding two years, if the principal of said mortgage indebtedness be not exceeding $2,500," etc.   Laws 1887, p. 75.

The section of the chattel-mortgage act in force when the mortgage in question was made is a literal transcript of section 3 of the Revised Statutes of Illinois of 1845, chapter 20.   This section has been construed again and again by the supreme court of that state.   In *Reed v. Eames*, 19 Ill. 594, it is held that "under a chattel mortgage the mortgagee must take possession of the property upon the default of payment of the debt.   Suffering property to remain with a mortgagor after a default in payment of a fraud *per se*, not subject to explanation. * * * The word 'so' in the proviso to the act respecting chattel mortgages has reference to the two years of time; meaning that, if the conveyance so expresses it, the property may remain with the mortgagor two years."   *Thompson v. Yeck*, 21 Ill. 73; *Funk v. Staats*, 24 Ill. 632; *Reese v. Mitchell*, 41 Ill. 365; *Lemen v. Robinson*, 59 Ill. 115; *Dunlap v. Epler*, 88 Ill. 82.

In 1874 the chattel-mortgage statute of Illinois was revised, and such mortgages were declared to be valid, "from the time it is filed for record until maturity of the entire debt or obligation."   R. S. Ill. 1874, § 4, ch. 95.

Under the statute and the authorities cited, it is clear that upon default it became the duty of Kinney & Horne to deliver the property to appellant, and that it became her duty to take actual and exclusive possession, and to assume absolute dominion and control over it.   A chattel mortgage is in law a conditional sale of chattels, and operates to transfer the legal title to the mortgagee. Upon breach of the condition the title becomes absolute, and the mortgagee may then treat the mortgaged property as his own.   After default, therefore, in the payment of the debt secured, the relations of the mortgagee

to the property, the rights of the creditors and subsequent purchasers in good faith, are to be defined and determined by the principles which are applicable to the relation between vendees and creditors upon a sale of personal property.    Jones, Chat. Mortg. § 375; *Funk v. Staats, supra.*

The sufficiency of the delivery and change of possession, therefore, in this case, is to be determined by section 1523 of the General Statutes of this state, which declares that "every sale made by a vendor of goods and chattels in his possession, or under his control, * * * unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against creditors of the vendor, * * * and this presumption shall be conclusive."

This section has been repeatedly construed by this court.    In *Cook v. Mann*, 6 Colo. 21, the rule is stated in the following language: "The vendee must take the actual possession, and the possession must be open, notorious and unequivocal, such as to apprise the community, or those who are accustomed to deal with the party, that the goods have changed hands, and that the title has passed out of the seller and into the purchaser.    This must be determined by the vendee using the usual marks or *indicia* of ownership, and occupying that relation to the thing sold which owners of property generally sustain to their own property.    The possession must be exclusive of the vendor.    A concurrent or joint possession is not admissible."    The same rule is announced in *Wilcox v. Jackson*, 7 Colo. 521.

In *Bassinger v. Spangler*, 9 Colo. 175, it was held: "It [the statute] admits of no excuse for leaving personal chattels, capable of manual delivery and removal, in the apparent possession of the vendor; nor does it admit of a construction whereby there may be a joint or concurrent possession in both vendor and vendee.    Nor can a case

be taken out of the statute, nor can the statute be satisfied, by proving that the sale was *bona fide.*"

The same doctrine was announced in April last in *Sweeney v. Coe,* 12 Colo. 485.

The rule is an arbitrary one. The reason of the rule has nothing whatever to do with its application, nor is it affected by the honesty or the good faith of the parties. Whenever personal property capable of manual delivery is left in the possession of the vendee, such possession cannot be explained, and constitutes a fraud in law. That there was no delivery of the property in controversy — no actual and continued change of possession within the meaning of the statute — will be apparent upon an examination of the evidence.

Adams, the first witness sworn in behalf of plaintiff, said: "When we went there on December 6th, we told them we would have to make the foreclosure. Horne made no serious objection to our foreclosing the mortgage. He said there were three days' grace, and I told him there was not. We checked off the stock, and I told Mr. Brandt to take charge of it. We didn't change the position of the stock nor the harness, nor separate it from the other property in the stables. We left it just as we found it. We did not put any notice or sign on the stable on December 6th."

Brandt, the custodian of the property, states: "We went to 549 Holladay street, — Kinney & Horne's stables. We went in the office, and stayed there about an hour, until Horne came, and then we went to work checking off the goods mentioned by me, and I was put in charge. I held the light while they were checking off. I stayed there all night. I did not go away. I had my breakfast, dinner and supper brought to me during the three days. I went out on the sidewalk, through the barn, and went across the street. I did not drive the horses under my charge. While I was there Hess, the hostler, fed the horses and took care of them. I do not know whether

he had any pay. I suppose he was working for Kinney & Horne. I did not move the horses out of the stable. I left all the property there. There was other property in the stable. The property put in my custody was not moved. It was watered and taken care of, and left right in the barn in the same place."

Atchison testified: "We did not separate the property in the chattel mortgage from the property that was not in the chattel mortgage. We did not put a sign over the door. I do not know as I noticed any sign there. I do not know who fed the horses in the barn. All the horses in the mortgage were not on the one side of the stable, I think. I think they were on both sides."

Horne, one of the mortgagors, called as a witness for defendant, testified: "Atchison said let the goods remain there for a few days. He said he would not move the goods. He would give us a few days to try and fix it up. We rented the barn. We paid the rent on it from the 6th to the 10th of December. Brandt sat in the office. He did not attend to the horses. I never saw him attend to hitching them up, or feed them, or curry them, even. He took no part whatever in anything pertaining to the horses or buggies. When I was there I attended to business the same as usual. Hess took charge of the horses. He was in our employ. We paid him, and paid him while Brandt was there, up to the time the sheriff came. We paid for the feed of the horses. They did not disturb any of the property,— they left them just as they found them. They did not take down the sign nor put up any sign. We offered horses for sale during this time. We used two of the horses in the package delivery, which were mentioned in the mortgage. 'George H.' was one of them. He worked all the while until the sheriff took possession. I drove the horses while Brandt was there."

Hess testified: "I was there when Atchison and Brandt came there on the evening of the 6th. They came there

in the afternoon, and stayed around the office. I had charge of the horses there,— attended to feeding and currying them. Brandt once in a while came back to the stable,— very seldom. I hitched up the horses every day. Brandt drove home to his meals mostly every day. I was under the direction of Kinney & Horne. Brandt never employed me. He did not say anything to me about feeding or currying them. I did not notice any change in the sign over the stable. No notice was put up. There was no change in the position of the stock between the 6th and 10th of December. Kinney & Horne used part of the stock most every day."

If, upon this evidence, the court below had found that there was a delivery and change of possession of the property, such a finding could not have been sustained. To satisfy the statute, the possession of the vendee or mortgagee after default must be exclusive. He must exercise exclusive dominion and control over the property. Such dominion cannot be shared with the vendor or mortgagor. If the property is capable of manual delivery, it must be removed and taken from the possession of the vendor, or it must be so dealt with as to give notice to the community that there has been a change of ownership. If, to accomplish this end and satisfy the statute, it is necessary to remove the property from the place where it has been kept, such removal must be made, however great the expense or hardship may be. The change of possession must not only be actual, as between the parties, but apparent to the community.

In this case Kinney & Horne, the mortgagors, were the proprietors of the stable where the property was allowed to remain. No steps whatever were taken which would constitute notice to persons accustomed to deal with them that they were not still the owners of the property, or that their relation to the property was in any wise changed. Within the meaning of the statute, therefore, there was no change of possession, and for

that reason, default having been made in payment, the mortgage was void as to creditors, both under the first section of the chattel-mortgage act and the section of the statute of frauds which has been cited, and the plaintiff was therefore not entitled to recover.

The judgment should be affirmed.

RICHMOND, C., concurs.   REED, C., dissents.

PER CURIAM.   For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*