THOMAS S. SILVIS

*v.*

C. AULTMAN & CO.

*Filed at Ottawa May 12, 1892.*

1. CHATTEL MORTGAGE—*securing debt not maturing within two years.* On August 1, 1887, a chattel mortgage was given to secure a debt of $1941.25 from the mortgagor to the mortgagee, evidenced by five notes, all of the same date with the mortgage, the first for $250, payable December 1, 1887; one for $425, payable December 1, 1888; one for $428, payable December 1, 1890, and one for $416.25, payable December 1, 1891. The mortgage gave the mortgagor the right to retain possession until default of payment, but the mortgagee might take possession if he should feel insecure, etc. The mortgage was recorded October 3, 1887,

and the two first notes were paid on August 1, 1889. An execution against the mortgagor was levied upon the mortgaged chattels: *Held,* that the mortgage was invalid and fraudulent in law as against the execution creditors making the levy.

2. Under the Revised Statutes of 1845, a chattel mortgage securing a note or other evidence of indebtedness which did not mature until after the expiration of two years from the time of recording the mortgage, was good and valid for two years, though it authorized the mortgagor to retain possession of the mortgaged property until default in payment.

3. But under the Mortgage act of 1874, as amended in 1887, which provides that a chattel mortgage shall be "valid from the time it is filed for record until the maturity of the entire debt or obligation, provided such time shall not exceed two years," a different rule must prevail. The words "such time," used in the proviso, refer to the period between the time of filing the mortgage for record and the maturity of the entire debt or all the notes secured by the mortgage, and the proviso qualifies the statement that the mortgage shall be valid for the period aforesaid, and restrains or limits the generality of such statement to cases where such period shall not exceed two years.

4. The length of time during which the mortgage shall be valid is the period that may elapse between the filing of it for record and the maturity of the whole debt, if such period shall not exceed two years. If some of the notes secured do not mature until after two years from the recording of the mortgage, it will be invalid, as against creditors and purchasers of the mortgagor, even as to those falling due within the period of two years.

5. Where a mortgage secures several notes, some falling due within and some after two years, it is not valid as to those notes maturing before the lapse of the two years, because "the maturity of the entire debt" means the maturity of all the notes. The fact that the mortgage may give the mortgagee, in certain contingencies, the right to declare all the notes due, will not change the result, as the maturity referred to in the statute is that fixed by the terms of the note or other obligations.

6. Where a part of the debt secured by chattel mortgage does not mature until after two years from the recording of the mortgage, section 4 of the act of 1874, as amended in 1887, providing for an extension of the mortgage, has no application.

7. STATUTES—*office of a proviso.* One of the offices of a proviso in a statute is to qualify or restrain the generality of the enacting clause.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. SWEENEY & WALKER, for the appellant.

Mr. WILLIAM JACKSON, and Mr. E. E. PARMENTER, for the appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action of replevin begun in August, 1889, in the Circuit Court of Rock Island County by the appellee, C. Aultman & Co., a company incorporated under the laws of Ohio, to recover the possession of certain personal property from the appellant, the defendant below, who was the sheriff of the county. The defense was, that the property belonged to James M. Davis, and that the defendant took the same, as sheriff, under an execution issued against Davis in favor of Elliott & Carpenter. Trial by jury was waived by agreement; there was a stipulation as to the facts, and the cause was heard by the court upon the agreed case, containing the points of law at issue between the parties. The finding of the Circuit Court was for the defendant, and judgment was rendered in his favor for one cent damages and costs, and for the return of the property replevied. The Appellate Court reversed the judgment of the Circuit Court, and ordered that the issues tried by the latter court on an agreed state of facts be found in favor of C. Aultman & Co., the appellant in the Appellate Court and the appellee here, and that it recover from the appellee there, who is the appellant here, one cent damages and the costs of the suits in both courts. The judges of the Appellate Court have granted a certificate of importance, and the case comes here by appeal from that court.

On August 1, 1887, the property replevied was the property of the said James M. Davis, and remained in his possession until it was levied upon and taken from him upon said execution. C. Aultman & Co., the plaintiff company in the court below, based its right to recover upon a chattel mortgage, bearing date August 1, 1887, and executed to it by said Davis.

This chattel mortgage recites, that it was given to secure an indebtedness of $1941.25 from Davis to C. Aultman & Co. according to the conditions of five notes made by the former to the order of the latter, all dated August 1, 1887, one for $250.00 payable December 1, 1887; one for $425.00 payable December 1, 1888; one for $425.00 payable December 1, 1889; one for $425.00 payable December 1, 1890; and one for $416.25 payable December 1, 1891. The mortgage authorizes the mortgagor to retain possession of the property "until he * * * shall make default in the payment of said promissory notes, or either of them above specified, either in principal or interest, at the time or times, and in the manner herein stated;" and it contains, among others, the following provision: "And in case default shall be made in the payment, etc., * * * or if the party of the second part, (C. Aultman & Co.,) or their successors and assigns, shall feel insecure or unsafe, or shall fear diminution, removal or waste for want of proper care of said property, * * * or if the same should be seized upon *mesne* or final process had against the said party of the first part, (J. M. Davis,) then, or in any or either of the aforesaid cases, all of said notes shall, at the option of the party of the second part, (C. Aultman & Co.,) or their successors and assigns, without notice, at once become due and payable," etc. The mortgage was acknowledged before a justice of the peace on September 17, 1887, and filed for record in the recorder's office on October 3, 1887.

On March 6, 1889, Elliott and Carpenter recovered judgment for $669.25, and, by virtue of the said execution issued thereon, the levy aforesaid was made upon the property in question on August 1, 1889. At the latter date the two notes payable December 1, 1887, and December 1, 1888, had been paid. After the levy, the plaintiff below declared the whole amount of the remaining notes due, and, after making demand upon the sheriff for the possession of the property, brought the present replevin suit.

The question is, whether the mortgagees, or the execution creditors, are entitled to the possession of the property. The determination of this question involves the decision of the further question, whether or not this chattel mortgage is a valid instrument under the statute of 1874, as amended in 1887 as hereafter referred to. The Circuit Court decided against its validity, and the Appellate Court has decided in favor of its validity.

Section 3 of chapter 20, entitled "Chattel Mortgages," of the revised statutes of 1845 was as follows: "Any mortgage of personal property so certified, shall be admitted to record by the recorder of the county in which the mortgagor shall reside, at the time when the same is made, acknowledged and recorded, and shall thereupon, if *bona fide*, be good and valid, from the time it is so recorded, for a space of time not exceeding two years, notwithstanding the property mortgaged or conveyed by deed of trust may be left in possession of the mortgagor: *Provided*, that such conveyance shall provide for the possession of the property so to remain with the mortgagor."

It will be noted that this section makes no reference to the debt secured by the mortgage. In *Cook* v. *Thayer*, 11 Ill. 617, a mortgage, executed under the statute of 1845, provided that the mortgagor might retain possession of the property until default was made in the payment of the note secured, and, as the note had three years to run from the date of the mortgage, it was claimed that the mortgage was thereby rendered fraudulent and void in law. But it was there held that a mortgage, which has longer than two years to run, is not without the protection of the statute altogether, and it was said: "It continues valid * * * for two years, whether the debt which it is designed to secure, then becomes due or not. At the expiration of the two years it ceases to be valid as against creditors and purchasers, unless the possession of the property is transferred to the mortgagee."

In the case at bar, the last three notes all run for a longer period than two years from the date of the mortgage and for a longer period than two years from the date when the mortgage was recorded. The last note runs more than four years from the date of the recording of the mortgage. Unquestionably, if the mortgage securing these notes had been executed when the law of 1845 was in force, the doctrine of the *Cook* case would apply, and the mortgage would have continued to be valid for two years, although the whole of the indebtedness secured by it did not mature until long after the expiration of two years.

In *Reed* v. *Eames*, 19 Ill. 594, the chattel mortgage, executed under the law of 1845, secured a note due in one month from the date of the mortgage and from the date of the recording of it, and provided that the possession of the property should remain with the mortgagor until default. It was there held that, as the mortgage did not authorize the mortgagor to retain possession for two years, the mortgagee ought to have taken possession one day after default in order to secure his lien, and, not having done so, a judgment creditor, levying his execution a little over a month after the maturity of the note, was allowed to hold the property.

In *Cass* v. *Perkins*, 23 Ill. 382, a mortgage under the same statute secured a note due in less than four months, and authorized the mortgagee to take possession on default. It was there held that, upon default in payment, the title vested absolutely in the mortgagee, and that a delay of three days after default was a fraud in law, and subjected the property to the lien of the execution, theretofore levied.

In 1874 the legislature passed "An Act to revise the law in relation to mortgages of real and personal property." (2 Starr & Cur. Stat. page 1630.) The fourth section of the Act of 1874 was as follows: "Such mortgage, trust deed or other conveyance of personal property, acknowledged as provided in this act, shall be admitted to record by the recorder of the
. . .

county in which the mortgagor shall reside at the time when the instrument is executed and recorded, or in case the mortgagor is not a resident of this State, then in the county where the property is situated and kept, and shall thereupon, if *bona fide,* be good and valid from the time it is filed for record until the maturity of the entire debt or obligation, provided such time shall not exceed two years." This section 4 was amended in 1887 by an Act approved June 16, 1887, and, as so amended, reads as follows:

"Section 4. Such mortgage, trust deed or other conveyance of personal property, acknowledged as provided in this act, shall be admitted to record by the recorder of the county in which the mortgagor shall reside at the time when the instrument is executed and recorded, or in case the mortgagor is not a resident of this State, then in the town where the property is situated and kept, and shall thereupon, if *bona fide,* be good and valid from the time it is filed for record until the maturity of the entire debt or obligation, provided such time shall not exceed two years, unless, within thirty days next preceding the maturity of the note or obligation for which such instrument or mortgage is given to secure, the mortgagor and mortgagee, his or their agent or attorney, shall file for record an affidavit setting forth particularly the interest which the mortgagee has, by virtue of such mortgage, in the property therein mentioned, and if such mortgage is for the payment of money, the amount remaining due and unpaid therein, and the time for which the said mortgage is extended, which said extension shall not exceed a further term of two years, upon which affidavit the clerk shall indorse the time when the same was filed; and the said mortgagee shall also, within the said preceding thirty days, file a certified copy of said affidavits with the justice of the peace before whom said mortgage was acknowledged, or his successor in office, and thereupon the mortgage lien originally acquired shall be continued and extended for and during the term of such extension."

Section 4 as amended in 1887 was in force when the mortgage in the case at bar was executed.    The Amendatory Act approved June 17, 1891, has no application here.

The Act of 1874 provides that the mortgage shall be "valid from the time it is filed for record until the maturity of the entire debt or obligation; provided such time shall not exceed two years."    The words "such time," as used in the proviso, refer to the period between the time of filing the mortgage for record and the maturity of the entire debt, or of all the notes secured by the mortgage.    One of the offices of a proviso is to qualify or restrain the generality of the enacting clause. (*City of Chicago* v. *Phœnix Ins. Co.* 126 Ill. 276.)    The proviso here qualifies the statement, that the mortgage shall be valid for the period aforesaid, and restrains or limits the generality of such statement to cases where the said period shall not exceed two years.    The length of time, during which the mortgage shall be valid, is the period that may elapse between the filing of it for record and the maturity of the whole debt, if such period shall not exceed two years.    It cannot be said that, if such period does exceed two years, the mortgage may be valid for such portion of it as does not exceed two years.    This may be true as between the mortgagor and mortgagee, but as, against creditors and purchasers, such a construction would do violence to the express words of the section.    It is the period between the recording and the maturity that must not exceed two years, and not the period between the recording and some date prior to the maturity.

The difference between the Act of 1845 and the Act of 1874 is very apparent.    It is also manifest, that the latter was intended to make a radical change in the test of the validity of a chattel mortgage.    Under the former Act, as construed by this Court, the mortgage was valid for two years from the time it was filed for record, even though the debt secured by it did not become due for more than two years.    Under the latter Act, the validity of the mortgage is limited to a period

of two years as before, but it must be a period of two years or less between the time of filing the mortgage for record and the maturity of the entire debt. Nor can it be said, where a mortgage secures several notes, some falling due within and some after two years, that it is valid as to the notes maturing before the lapse of the two years, because "the maturity of the entire debt" means the maturity of all the notes.

Counsel say, that, where the mortgage authorizes the mortgagee to declare the whole debt due, as is the case here, the debt has matured when such declaration is made. It is therefore argued, that the mortgage is valid even if the debt secured by it is not payable until after the lapse of two years, because the mortgagee may cause the debt to mature by declaring it due upon the happening of one of the contingencies named in the mortgage.

The power to declare the debt due is a provision of the mortgage, and not of the note or other instrument secured by the mortgage. The maturity referred to in the statute is the maturity fixed by the terms of the note, bond or other instrument, which evidences the indebtedness secured by the mortgage. For instance, in the present case, the maturity of the entire debt is December 1, 1891, when the last note is made payable.

That the construction thus given to the statute is in harmony with the intention of the legislature is manifest from the language of the amendment of 1887. The words added in 1887 to the Act of 1874 are an amendment to the proviso. They provide for an extension, which shall not exceed a further term of two years, by the filing for record of an affidavit, and with the justice of the peace a certified copy, etc. This affidavit must be so filed within thirty days next preceding the maturity of the *note* or obligation which the mortgage is given to secure. If the note secured by the mortgage may run longer than two years, the provision here made for an extension cannot apply to it. Such provision is meaningless, unless the

maturity of the note is limited to two years from the filing of the mortgage for record. If the maturity named in the statute refers to that which is brought about by declaring the whole debt due for any of the causes authorizing such declaration, as they are above stated, the provision for extension is equally inapplicable. It is hardly probable, that the affidavit named in the amendment would be filed thirty days before the maturity of the note, if the note was made to mature because the mortgagee felt insecure or unsafe, or feared waste, or because the property was seized on mesne or final process.

There can be no hardship in requiring that debts secured by chattel mortgages should not run longer than two years, as against creditors and purchasers. These mortgages provide for the retention of the possession of the property by the mortgagor, and, generally, that the possession shall be so retained until default in payment. Where the note is not due until after the lapse of two years, there may be no default until after the lapse of two years. Thus, the mortgage amounts to an agreement, that the mortgagor may retain the personal property in his possession for a longer period than two years. Such agreements are in fraud of the rights of the general creditors.

As the chattel mortgage in this case secured a debt which did not fall due until more than two years after the filing of the mortgage for record, we think the mortgage was invalid as against the execution creditors who levied upon the property.

The judgment of the Appellate Court is reversed, and the cause is remanded to that court with directions to enter a judgment affirming the judgment of the Circuit Court.

*Judgment reversed.*

CRAIG and SHOPE, JJ., dissenting.