### Richards v. Matson et al.

1. CHATTEL MORTGAGES—*Void, When Securing Notes Not Maturing Within Two Years.*—A chattel mortgage given to secure notes, a part of which did not mature within the statutory limit of two years, is void as to judgment creditors, who have levied upon the mortgaged chattels.

2. CHATTEL MORTGAGES—*Days of Grace.*—The extension of three days of grace beyond the day named, in a promissory note or bill of

Richards v. Matson.

exchange for payment, has, either by the law merchant or statute, become a fixed and positive rule of law, and as much fixed upon and made a part of the contract between the parties as though it were written on ts face.

3. PROMISSORY NOTES—*Days of Grace.*—The note does not become due, and the maker is not in dishonor and can not be sued until the expiration of the days of grace.

4. CHATTEL MORTGAGES—*Maturity of Debt Secured—Days of Grace.* —Where a chattel mortgage was given to secure a note, payable two years after date, such note being entitled to days of grace, it was held that the note did not mature and become payable until three days after the statutory limit of two years, within which the entire debt or obligation must mature. The mortgage was, therefore, as to the whole of the indebtedness secured by it, void as to execution creditors who had levied executions upon the property.

5. CHATTEL MORTGAGES—*Power to Declare Entire Debt Due.*—Where a power to declare a debt due is in the mortgage and not in the notes secured by it, *it was held* to be a power conferred, in order to enable the mortgagee to take possession and make his money upon the happening of certain contingencies mentioned in the mortgage, irrespective of whether the contract had matured by its terms, or not. Whereas, the maturity referred to in the statute, is the maturity fixed by the terms of the notes, or other evidences of indebtedness, secured by the mortgage.

6. CHATTEL MORTGAGES—*Possession Taken on Default—What is Not Sufficient.*—A mortgagee, upon default being made, requested the mortgagor, a corporation, to appoint its secretary custodian of the property pending a foreclosure, which was done, and the secretary took possession of the property, a large printing and publishing establishment. There was no visible change made by the secretary after he was appointed custodian, or by anybody else, either in the possession of the mortgaged property or in the method of conducting the business. The same signs remained on the building, and about the premises, and no new one was added; the business was continued in the name of the corporation; bills were incurred and were collected in the name of the corporation the same after as before the appointment of the custodian. Of about one hundred employes, not one, except the confidential book-keeper, was informed of any change; the same books and the same stationery were used, without mark or sign to indicate a change. *It was held* that the possession was not of the character required by law and was void as to third persons.

7. CHATTEL MORTGAGES—*Change of Possession on Default.*—Secret assignments will not take the place of open and visible indications from which other persons may observe a change of possession.

**Memorandum.**—Trover. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1893, and affirmed. Opinion filed January 11, 1894.

The statement of facts is contained in the opinion of the court.

E. A. SHERBURNE and GILBERT E. PORTER, attorneys for appellant.

APPELLEES BRIEF, LACKNER & BUTZ, AND ASHCRAFT & GORDON, ATTORNEYS.

No legal possession was taken or retained. Thornton v. Davenport et al., 1 Scam. 296; Mumford v. Canty, 50 Ill. 374; Reese v. Mitchell, 41 Ill. 365; Ticknor v. McClelland et al., 84 Ill. 472; Thompson v. Zeck, 21 Ill. 73; Thompson v. Wilhite, 81 Ill. 356; Wood v. Loomis, 21 Ill. App. 604; Gillett v. Stoddard, 30 Ill. App. 231; Doyle v. Stevens et al., 4 Mich. 87; Wilcox v. Jackson, 4 Pac. Rep. 966; Cook v. Mann, 6 Colo. 21; McKibbin v. Martin, 64 Pa. St. 352; Claflin et al. v. Rosenberg et al., 42 Mo. 439.

The mortgage relied upon is void. Silvis v. Aultman & Co., 141 Ill. 632; Arnold v. Stock, 81 Ill. 407; Ogden v. Saunders, 12 Wheat. 298; United States v. Arredondo et al., 6 Pet. 715; United States v. Union Pac. R. R. Co., 91 U. S. 85; 1 Daniel on Negotiable Instruments, Sec. 615; Parsons on Notes and Bills, Vol. 1, 390 and 394 (1870).

Bank of Washington v. Triplett, 1 Pet. (U. S.) 25; Savings Bank v. Bates, 8 Ct. 505; Fox v. Bank of Kansas City, 30 Kans. 441; Cook v. Renick, 19 Ill. 598; Bell et al. v. First Nat. Bk. Chicago, 115 U. S. 373; Taylor v. City of New York, 82 N. Y. 18.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The questions involved herein are those between judgment creditors under executions, and chattel mortgagee.

R. R. Donnelly & Sons, a corporation, on August 20, 1889, executed its seventeen promissory notes, in various amounts, aggregating $76,906.71, payable to the order of the appellant, in six, twelve, fifteen, sixteen, eighteen and twenty-four months after date, with interest; and on the same day, to

secure said note, it executed a chattel mortgage to appellant upon what was substantially all the property that belonged to the said corporation. The mortgage was duly acknowledged and recorded on the same day it was made, and by its terms provided that possession of the mortgaged property might remain with the mortgagor.

Richards, the appellant and mortgagee, had no pecuniary interest in the transaction, but acted solely as trustee for certain creditors for whose benefit the notes were given, and to whom the notes were assigned and delivered.

The first maturing note fell due on February 20–23, 1890, and was not paid. At that time the corporation was finan, cially embarrassed, and its president and the holders of the notes arranged together. that all the notes should be declared due, under a provision contained in the mortgage giving authority to do so upon default in the payment of any of the notes as they should mature, and that appellant, through one Moore, the secretary of the corporation, should take possession of the mortgaged chattels.

In pursuance of that arrangement, the note holders, on February 24, 1890, joined in a written communication to the mortgagee, appellant, notifying him of the default, and that because thereof, in pursuance of the provisions of the mortgage, they had declared the whole indebtedness due, and directing him to take possession, and requesting him to appoint Moore, the secretary of the corporation, as his agent, custodian of the property.

Accordingly, on the same day, that communication was, at the request of the note holders, carried by Moore to appellant, who thereupon gave orders to Moore, in writing, as follows:

"Chicago, Monday, February 24, 1890.

To F. E. Moore: You are hereby authorized and directed to take possession of the property described in the within mortgage for me, the said money therein mentioned being unpaid, and I direct that you hold such possession and control for me.

John T. Richards, Mortgagee."

Armed with that paper, Moore returned to the corporation's place of business, where the mortgaged chattels were all situated and in use, and where all the business of the corporation—that of a large printing and publishing house—was carried on, and, as Moore testified, "took charge there and remained in charge," until March 5, 1890, and that on the morning of March 6, 1890, he found the sheriff in possession and was prevented from entering the place.

There was no visible change made by Moore, after he was appointed custodian, or by anybody else, either in the possession of the mortgaged property or in the method of conducting the business. The same signs remained on the building and about the premises, and no new one was added; the business was continued to be conducted in the name of the corporation; bills were incurred and were collected in the name of the corporation the same after as before Moore's appointment as custodian; of about one hundred employes, not one, except the confidential book-keeper, was informed of any change; the same books and the same stationery were used without mark or sign to indicate a change. Indeed, no visible change was made, and none was intended to be made.

It was the purpose of the note holders, and of all in their interest, that whatever was done should be kept secret, in order, as was thought, to accomplish a sale of the property under more favorable auspices and to better advantage than if it were known the corporation had failed.

Two of the principal note holders were, it is true, accustomed to go frequently to the place of business, but there was no act done there by either of them from which any one, except Moore, could know why they were present.

On March 5, 1890, two judgments by confession in favor of other creditors were recovered against the corporation, and execution issued and levied, and the sheriff took possession thereunder of all the property covered by the chattel mortgage.

Upon a creditor's bill filed upon one of said judgments, a receiver was appointed to whom all of the property levied

upon was turned over, and subsequently the receiver sold the property.

On March 8, 1890, this action of trover was begun by the chattel mortgagee against the sheriff and the execution creditors.

It was stipulated that at the time of the levy of the executions the property was in the premises of the corporation, where it had always been since the mortgage was given, and that the sheriff turned over and delivered to the receiver, all of the property on March 7, 1890.

By agreement, also, a verdict of not guilty was entered as to the sheriff.

The court instructed the jury to find the other defendants, the execution creditors, not guilty, and from the judgment entered upon the verdict this appeal is prosecuted.

The judgment was right. The mortgage was given to secure notes a part of which did not mature within the statutory limit of two years, and was therefore void as to judgment creditors, who levied upon the mortgaged chattels. Silvis v. Aultman, 141 Ill. 632.

It was held in Appleton v. Parker, 15 Gray, 173, that the sureties upon a bond conditioned for the payment by the principal of certain moneys for goods to be delivered within three months from the delivery, were discharged by the acceptance by the obligee of a note given by the principal on the date of the delivery of the goods, payable by its terms three months after its date. And the decision was placed squarely on the ground that the effect of taking a note payable at three months was, because of the additional three days of grace allowed by law, an extension of the time of payment beyond that prescribed by the bond. And the learned judge who wrote the opinion in that case, said :

" The only case to which we were referred as giving a sanction to the contrary doctrine, and holding the surety liable, in disregard of the extension of the three days of grace, is that of Smith v. Dann, 6 Hill, 543."

The New York case last referred to, justified its conclusion that a guaranty by one, of a credit of three months to

be given another, was not varied by the taking of a note at three months, on the ground that guaranties, like other commercial contracts, must be construed with reference to the usages of trade, and found that according to the usages of merchants it was customary to give and take notes entitled to grace, in fulfillment of contracts to be performed within the time specified in the notes, without regard to days of grace.

But such a conclusion could not, we think, be justified, when to so hold, would, as in this case, contravene an express statute fixing the duration of the life of a chattel mortgage as against execution creditors, at two years.

Our statute concerning mortgages of personal property, provides that they shall not be valid " as against the rights and interests of any third person," unless possession of the property shall be delivered to and remain with the mortgagee, or the mortgage itself shall provide that possession of the property shall remain with the mortgagor; and then shall be valid only, when the " time shall not exceed two years," " from the time it (the mortgage) is filed for record until the *maturity* of the entire debt or obligation." Secs. 1, 2, 3, Chap. 95, R. S.

It was held in Arnold v. Stock, 81 Ill. 407, that a note secured by chattel mortgage did not mature until the end of the days of grace to which the note was entitled.

The extension of three days of grace beyond the day named in a promissory note or bill of exchange for payment, has, either by the law merchant or statute, become a fixed and positive rule of law, and as much fixed upon and made a part of the contract between the parties as though it were written on its face. Ogden v. Saunders, 12 Wheaton, 213, (p. 342); Appleton v. Parker, *supra*.

The note does not become due, and the maker is not in dishonor and can not be sued until the expiration of the days of grace. Ibid.; Arnold v. Stock, *supra*; 1 Daniel on Negotiable Instruments, Sec. 614; 1 Parsons on Notes and Bills, 390.

It would seem, therefore, that the last four notes, aggregating $4,400.35, payable twenty-four months after date,

Richards v. Matson.

did not mature and become payable until three days after the statutory limit of two years, within which "the entire debt or obligation" must mature, and, plainly, within the ruling of Silvis v. Aultman, *supra*, the mortgage was therefore, as to the whole of the indebtedness secured by it, void as to execution creditors, who had levied.

That the mortgagee elected to, and did, declare the whole debt due (assuming that what he did was sufficient for that purpose), under the provisions of the mortgage, does not aid the appellant, so far as this question is concerned.

The power to declare the debt due is found in the mortgage and not in the notes. It was a power conferred in order to enable the mortgagee to take possession and make his money upon the happening of certain contingencies mentioned in the mortgage, irrespective of whether the contract had matured by its terms, or not. Whereas, the maturity referred to in the statute is the maturity fixed by the terms of the notes, or other evidences of indebtedness secured by the mortgage. Silvis v. Aultman, *supra*.

If, in the pursuance of the exercise of that power, and of the right, thereupon, to take possession of the mortgaged chattels and sell the same, a possession, such as the law will recognize as good against third persons, had been taken of the mortgaged property, and retained by the mortgagee, a different question would have been raised, notwithstanding the fact that the mortgage was invalid as against execution creditors who might levy without notice of such possession.

Referring back to the brief statement of the facts as to what was done by appellant in the way of taking possession of the mortgaged premises, after the indebtedness secured by the mortgage had been declared due, we fail to find sufficient to amount to such evidences of possession as the law requires.

There was no obvious change in the possession, by Moore, as custodian, from what had previously existed, in Moore as secretary.

Secret assignments will not take the place of open and visible indications from which other persons may observe a change of possession.

And, as already said, the arrangement was intended to be a secret transfer only, and it can not be sustained without a clear departure from the law long since laid down, and frequently reiterated, in this State. Thornton v. Davenport, 1 Scam. 296; Mumford v. Canty, 50 Ill. 370; Reese v. Mitchell, 41 Ill. 365; Ticknor v. McClelland, 84 Ill. 471; Gillette v. Stoddart, 30 Ill. App. 231.

The judgment of the Circuit Court will be affirmed.