Caldwell, J.,
delivered the opinion of the court.
On the trial of this cause, on error, in the Supreme Court, %nany errors were assigned to the ruling of the common pleas, on the trial in that court, on points of evidence, and also to the charge of the court to the jury. We propose, however, to confine ourselves to a single assignment, as that raises the principal question in controversy, and in the opinion of the court is decisive of the case. That question is thus presented by the bill of exceptions: “ The plaintiffs requested the court to charge the jury, that if the proof established the fact that plaintiffs were honest creditors of Garnier, and the chattel mortgage was obtained from Bour for the purpose of securing their claim, the mortgage is good and valid, even though the plaintiffs had notice that the sale from Garnier to Bour was fraudulent. Which chai’ge the court refused to give to the jury, but, on the contrary, the court charged the jury, that if, at the time of making said chattel mortgage, Dietrick, as the agent of the plaintiffs, had sufficient knowledge of the nature of the transactions between Garnier and Bour, to induce him to believe that the same was fraudulent, said mortgage was fraudulent and void as against existing creditors.” The point on which this charge was given was one directly raised by the evidence in the case, and was pertinent to the issue between the parties. Did the court of common pleas charge the law? We think they did not.
Taking it for granted, that the transfer from Garnier to Bour was fraudulent, and that plaintiffs knew of that fact, we do not see why they, as creditors, were deprived of any of their rights, in Securing their claim. The sale from Garnier to Bour was void, and of no effect, as against the rights of creditors, but good as between the parties.
Before the sale of the goods to Bour, the plaintiffs would have had a right to have their claim secured by a mortgage from Garnier on the goods, and we do not see why Garnier and Bourmight not agree, as they did, that plaintiffs might have the benefit of the goods as security for their debt, as though no such sale had taken place. They wore thus doing away the fraud committed by the sale, and using the goods in *tbe way the law required they should be used—in the payment of Garnier’s debts. The creditors who made the levy on the goods, and thus took them, out of the possession of plaintiffs, had no preferred claim on them. *340 At the time the goods were mortgaged to plaintiffs, the claims of the judgment creditor were not due. It was only by obtaining a power of attorney from Gamier, to confess a judgment, that they were enabled to proceed to their claims at the time they did. We do not think it was necessary for the plaintiffs to proceed by legal process, to secure their claim in the goods; but that if, by a fair transaction, they obtained a security on the goods, without execution, such security would bo available, and could not be treated as a nullity.
It is true, that, from all the circumstances attending the taking of the mortgage from Bour, on the stock of goods, the mortgage would probably (if that question were before us for decision), be held to come within the provisions of the statute (Swan’s Stat. 717, see. 68), and inure to the benefit of all the creditors. But that would not vitiate the mortgage so as to render it a nullity; the statute merely gives such assignments a particular direction ; it does not avoid them; it makes an assignment that was intended for the benefit of one or more creditors, exclusively, to inure to the benefit of all the creditors. If, then, this mortgage of plaintiffs was such an assignment, as we think it was, the other creditors had not a right to appropriate the entire property to the payment of their claims by execution; but they .had a right to share equally, under the assignment, with the plaintiffs, in proportion to their respective claims. We think the court of common pleas erred in their charge to the jury, and that the judgment of the Supreme Court, in affirming the judgment of the common pleas, is erroneous. The judgment of the Supreme Court will therefore be reversed.
We have examined the authorities cited in this case, on both sides, and, without going into a detailed examination of them, we would merely remark that we do not think they conflict *with the conclusion to which we have come, but, on the contrary, so far as they apply, we think they harmonize with it. Judgment reversed.