## SWEENEY V. COE ET AL.

1. SALE — CHANGE OF POSSESSION — PRACTICE. — Plaintiffs' agent purchased for them certain railroad ties which were on the banks of a river preparatory to being floated down, and which the agent did not see because of difficult access to them. A bill of sale was made and recorded, and the agent told several persons of the sale, but nothing else was done to effect a delivery. The seller was thereafter employed by plaintiffs to cut coal props in the vicinity of the ties, and to float both props and ties down the river; and while he was so engaged the ties were attached in his hands by his creditors. Plaintiffs had for several years previously furnished the

seller means to defray his expenses while floating his own ties, which fact was generally known. Plaintiffs had exercised no personal control over the ties. *Held*, that there was not a sufficient notice of change in the ownership of the ties to comply with General Statutes, chapter 43, section 14, providing that every sale of goods, unless accompanied by immediate delivery, and followed by actual and continued change of possession, shall be conclusively presumed fraudulent as against the vendor's creditors.

2. MOTIONS FOR NONSUIT AND NEW TRIAL.— Failure of defendant to move for a nonsuit at the close of plaintiffs' evidence showing the sale to them is not a waiver of his right to move for a new trial after verdict against him on the ground that such verdict is contrary to the evidence, where his own evidence did not in any way strengthen plaintiffs' case.

*Appeal from District Court of Larimer County.*

THIS action involves the question of ownership and right of possession to a number of railroad cross-ties. The plaintiffs, Coe & Carter, claim to have purchased the ties in December, 1884, from Samuel B. Stewart; and the defendant, James Sweeney, denies the ownership and right of possession asserted by the plaintiffs; avers that in August, 1885, he was sheriff of Larimer county, and as such sheriff took said ties from the possession of Stewart by virtue of attachment writs issued at the instance of certain creditors of Stewart; that the ties were then the property of Stewart,— and thus justifies his taking and detention under said writs of attachment.

A jury trial was had in October, 1885, and resulted in a verdict for the plaintiffs.

A motion for a new trial was interposed by the defendant on the ground that the verdict was against the law and contrary to the evidence. This motion was overruled, and judgment was entered upon the verdict in favor of the plaintiffs.

Messrs. BALLARD & ROBINSON, DAVIDSON & CLARK and H. F. WILLIAMS, for appellant.

Messrs. DECKER & YONLEY, for appellees.

DE FRANCE, C.   Section 14 of the statute relating to frauds and perjuries reads as follows: " Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith; and this presumption shall be conclusive." [1]

The argument for a reversal is based solely upon the proposition, affirmed by the defendant, that the sale of the ties in controversy from Stewart to the plaintiffs was not accompanied by an immediate delivery, followed by an actual and continued change of possession, and was therefore fraudulent and void as against the creditors of Stewart.   Whether the evidence upon the question of delivery and continued change of possession is sufficient to sustain the finding of the jury and the judgment of the court is the only question presented for determination.   Want of good faith, or fraud in fact, is not claimed or insisted upon before this court.

The purpose and intent of the section of the statute above quoted has been so fully explained and commented upon by this court in the cases of *Cook v. Mann*, 6 Colo. 21; *Wilcox v. Jackson*, 7 Colo. 526, and *Bassinger v. Spangler*, 9 Colo. 175, that we shall content ourselves here with a mere application of the law to the facts.

It appears that the plaintiffs resided at Omaha, in the state of Nebraska, and were represented in the purchase of the ties by an agent named Hilton.   The ties in controversy were then located upon the head-waters of the Cache la Poudre river, in the county of Larimer, and had been made and delivered upon the banks of said

---

[1] Gen. St. ch. 43.

river, preparatory to floating them down the same to the valley during the following spring or summer, when the waters would permit. They were scattered along said river in different lots and localities for a distance of about thirteen miles. Hilton, the agent, and Stewart, the vendor, on the occasion of said sale, started from Fort Collins to visit the locality of the ties, but for what purpose — unless to count or make an estimate of the same — does not clearly appear. Before arriving at the ties, however, and upon learning that access thereto was somewhat difficult on account of the snow, they abandoned any further effort to visit the same, and returned to Fort Collins. A bill of sale for the ties from Stewart to the plaintiffs was then made and recorded in the office of the county clerk of said county of Larimer. With the exception of Hilton's telling several persons of the sale, this is all that was done at that time to effect a delivery and change of ownership.

Shortly afterwards the plaintiffs employed Stewart at monthly wages to cut coal props for them in the vicinity of the ties, and to run such props, together with the ties, down the river to the valley, when the waters should thereafter arrive at a proper stage for such purpose. Stewart was to employ the necessary assistance, and to superintend such business, while the plaintiffs were to bear the expense. In pursuance of this arrangement, Stewart employed assistance and run the ties down the river to a boom near La Porte, where, upon their arrival in August, 1885, and while still in the apparent possession of Stewart, they were taken by the defendant under said attachment writs. It seems to have been understood by some of the employees, as well as by some other persons, that the plaintiffs were advancing means to defray the expense of the drive; but to this fact no importance can be attached, for the reason that Stewart had for several years prior to that time been engaged in that business in that vicinity, and the plaintiffs had fur-

nished him with means to defray his expenses — a fact which, it seems, was generally known.  To all appearances, there was nothing different in the relationship of the plaintiffs to this particular drive than to other drives made by Stewart on former occasions when the ties were his own.  Neither of the plaintiffs, as we infer from the testimony, was present at any time from and including the date of the sale until after the ties were attached by the defendant, to exercise control over the same, or the drive thereof, made by Stewart; nor did either of them exercise any such control in person.  These are all the material facts bearing upon the question presented for our determination.

While a removal of the ties at the time of or immediately following the sale was practically out of the question, on account of their situation and the time of the year in which the sale was made, yet other acts might have been substituted to indicate a change in the ownership thereof.

Following the principles announced in the cases hereinbefore cited, we regard the evidence insufficient to warrant the verdict and judgment.  No act whatever was performed of a nature sufficient to apprise the community or the creditors of Stewart of a change of ownership.  "The statute does not permit the transaction to rest upon the declarations of the parties."  *Bassinger v. Spangler, supra.*  Some act or acts must be performed sufficient to constitute a delivery.  As said in *Cook v. Mann, supra:*  "When the subject of the sale does not reasonably admit of an actual delivery, it is sufficient if the vendee assume the control and dominion of the property, so as reasonably to indicate to all concerned the change of ownership."  And again:  "The vendee must take the actual possession; and the possession must be open, notorious and unequivocal, such as to apprise the community, or those who are accustomed to deal with the party, that the goods have changed hands, and that

the title has passed out of the seller and into the purchaser. This must be determined by the vendee using the usual marks or *indicia* of ownership, and occupying that relation to the thing sold which owners of property generally sustain to their own property."

In *Bassinger v. Spangler*, the court say, in reference to property which from its character or condition is not the subject of immediate removal: "But other acts can be substituted which will apprise the community of the change of ownership and satisfy the demand of the law." In that case the facts presented to sustain the sale were much stronger than in the case at bar, yet they were held insufficient. The making of the bill of sale, procuring the same to be recorded, and telling a number of persons of the sale, constituted no notice whatever of a change of ownership. The law does not provide that a bill of sale may be recorded, or that the record thereof shall be notice for any purpose. The ties were not inaccessible; and some person other than the vendor could have been placed in charge thereof, or some notice or sign might have been posted at or within the vicinity of the ties, or some other act or thing done, to apprise the community of the change of ownership.

It is suggested in the argument of counsel for plaintiffs that the defendant should have made a motion for a nonsuit before introducing any testimony on his part, in order to preserve and sustain the rights now claimed; but this, we think, was optional with him. His evidence did not supply what was wanting in that of the plaintiffs to make a case, or in any wise strengthen the case made by the plaintiffs. By his failure to interpose such motion he did not lose or waive the right to insist upon the errors assigned.

For the reasons above stated we think the court erred in refusing the motion for a new trial, and that for such error the judgment should be reversed.

RISING, C., concurs.  STALLCUP, C., dissents.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment of the court below is reversed.

*Reversed.*

ELLIOTT, J., not sitting, having tried the case below.