FINDING V. HARTMAN ET AL.

1. CONTRACT FOR A SALE OF CHATTELS TO BE SUBSEQUENTLY DELIV-
   ERED NOT A FRAUDULENT CONVEYANCE.— A contract under which
   a firm of merchants are to furnish supplies and money to the own-
   ers of a mine, and in return are to receive ore as mined, is not a
   present absolute sale of the ore, though it contains the words
   "sells, assigns and transfers;" and it is therefore not within the
   provision of the General Statutes of Colorado, chapter 43, sec-
   tion 14, declaring that every sale of chattels, unless accompanied
   by an immediate delivery and a continued change of possession,
   shall be conclusively presumed fraudulent as against creditors of
   the vendor.

2. TITLE TO THE CHATTEL VESTS UNDER THE CONTRACT ON DELIV-
   ERY.— Under such a contract title to the ore vests in the mer-
   chants on its delivery, and a creditor of the mine-owners who
   thereafter attaches it takes nothing by his levy.

3. THE CONTRACT IS NOT ASSAILABLE FOR IRREGULARITY AFTER DE-
   LIVERY.— The contract having been carried out by the mine-owners
   jointly, and title to the ore having vested in the merchants on its
   delivery, the attaching creditor cannot assail the contract because
   it was executed in the name of only one of the mine-owners.

*Appeal from District Court of Summit County.*

DOLMAN, STALEY & BLACKMAN, as lessees, were engaged
in extracting and shipping ore from the Cincinnati mine,
near Breckenridge. For the purpose of obtaining pro-
visions and materials from time to time as needed to
carry on said business, Dolman, in their behalf, entered
into a written contract with J. H. Hartman, acting for
the firm of J. H. Hartman & Bro., merchants in the
town of Breckenridge. The terms of this contract suf-
ficiently appear in the opinion.

Dolman *et al.* became indebted to Hartman & Bro. in
the sum of $441, and in pursuance of said contract they
undertook to deliver to Hartman & Bro. thirteen thou-
sand five hundred and eighteen pounds of selected ore.
This ore was brought to the town of Breckenridge and
loaded into a railroad car. Thereafter, and before the

car was sealed, the deputy sheriff notified the station agent that he attached it, but made no effort to take possession. On the same day the car was duly sealed ready for shipment, in the name of J. H. Hartman & Bro., to whom the bill of lading was made out. At a later hour the sheriff and deputy returned, broke open the car, levied upon the ore under the writ of attachment, took possession, and removed it to the ground. Prior to this levy Hartman notified the officer that the ore belonged to J. H. Hartman & Bro.

The attachment proceeding mentioned was instituted by appellant Finding for a sum due him from Dolman and one Hudson, who had previously acted as copartners, under the firm name of Hudson and Dolman. Plaintiff obtained judgment for the amount of his claim, and the *regularity of the issue* of his attachment writ was sustained. Hartman & Bro., however, intervened under the statute, and upon the plea of intervention the principal trial took place. The intervenors recovered a judgment for the redelivery of the ore, together with $50 damages. From that judgment the present appeal was taken.

Between the dates of levy and trial in the district court the ore lay on the ground, exposed to the weather, driven over and somewhat scattered by wagons, for a period of six months. The two grades into which it had previously been divided were by the sheriff, in unloading, indiscriminately mingled. Testimony was offered by plaintiff showing the injury thus occasioned. Proof was also admitted to the effect that Hartman & Bro. paid $75 attorney's fees at the first trial, which took place in the county court.

Mr. M. B. CARPENTER, for appellant.

Messrs. MONTGOMERY & FROST, for appellees.

CHIEF JUSTICE HELM delivered the opinion of the court.

Finding was not a creditor of Dolman, Staley & Blackman, nor was he a creditor of Dolman alone. His claim was against Hudson & Dolman, a partnership that had previously ceased to exist. It is extremely doubtful, therefore, if he could in any event maintain his attachment upon the ore in question. Certain it is that he was not entitled to hold the interest therein of Staley and Blackman. The mere fact that their names do not appear in the so-called "bill of sale" to Hartman & Bro. does not conclude their rights in the premises. But we prefer to rest the present decision upon other grounds.

The jury must, under the instructions, have found that the ore in question was delivered to Hartman & Bro. before the levy of the attachment, and there is no doubt but the evidence amply sustains this finding. The attempt of the deputy sheriff to levy his writ in the morning was ineffectual because he took no possession.

It is insisted, however, as a matter of law, that, under section 14 of the statute of frauds, the failure to make an immediate delivery of the ore, upon execution of the alleged bill of sale or assignment, rendered the entire transaction void as to creditors of the vendor. If this position be correct, it is decisive; for, as a matter of fact, twenty-six days intervened between the execution of the instrument and delivery of ore thereunder. Assuming, for present purposes, that Finding was a creditor of Dolman, Staley & Blackman, we shall proceed to consider this objection.

At the common law, and under statutes in affirmance of the common law, the absolute sale of personal property, unaccompanied by immediate delivery and continued change of possession, was regarded as fraudulent. But as to whether such transactions should be treated as frauds *per se* and void, or simply as indications of fraud

in fact subject to contradiction by proof of good faith, and hence merely voidable, there was great contrariety of judicial opinion. In some instances the same tribunal has at different periods favored both doctrines; this is true of the supreme court of the United States. See *Hamilton v. Russell*, 1 Cranch, 310; *Warner v. Norton*, 20 How. 448. To put the matter entirely at rest, the specific provision under consideration was wisely enacted. Its conclusiveness in fixing upon such transactions the character of fraud in law, incapable of explanation, has been frequently recognized by this court. *Cook v. Mann*, 6 Colo. 21; *Wilcox v. Jackson*, 7 Colo. 521; *Ray v. Raymond*, 8 Colo. 467; *Bassinger v. Spangler*, 9 Colo. 175; *Sweeney v. Coe*, 12 Colo. 485.

The statute in question reads: " Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and this presumption shall be conclusive." Gen. St. ch. 43, § 14.

Obviously, this provision deals with sales or assignments of personal property capable of immediate delivery, when the present transfer of title is affirmed. It was. intended to prevent fraud upon creditors and purchasers through retention of possession and continued apparent ownership after an asserted sale or assignment, complete in all other respects. The object of its framers was, so far as possible, to remove temptation for the commission of fraud in transferring the ownership of chattels.

The alleged bill of sale or assignment upon which reli-

ance is placed in the case at bar does not belong to such a transaction. It is inartificially drawn, and the words, "sells, assigns, and transfers," are employed; but several elements usually characterizing an actual sale are absent. No present payment, either in money or goods, is recited, nor is a present delivery of ore pretended. No definite quantity of ore is mentioned, and no purchase price is specified. The ore itself had not been mined, and could hardly be said to have had more than a potential existence. It was not only incapable of immediate delivery, but, owing to the uncertainties of mining, serious doubt existed if delivery would ever be possible. Hartman & Bro. were only to receive enough of the ore as extracted to satisfy the amounts due from time to time, upon orders previously paid, either in goods or money. This might require the total output, or it might take but a small fraction thereof. If, perchance, more than a sufficient quantity of ore for this purpose were delivered, they would doubtless have to account to Dolman & Co. for the surplus of proceeds.

The idea of security is conspicuous in the writing, and the agreement is executory, having reference entirely to future transactions. It is intended to secure future advantages to one party, and give protection in connection therewith to the other. Hartman & Bro. are to furnish supplies and money, and in return are to receive ore as mined. This agreement is binding between the parties, but it does not constitute a present absolute sale as to creditors. Hartman & Bro. have a right to require compliance so long as it is within the power of Dolman & Co. to render the same. But, if a creditor attaches before delivery under the contract, such creditor takes precedence in payment, and a title acquired through his levy would undoubtedly be good. Thus it appears that not only is the transaction in its nature intrinsically without the letter of the statute now under consideration, but

also without its spirit; for creditors are not thereby deceived or prejudiced.

Under this contract, title to the ore on one hand, or to the goods or money on the other, does not pass until actual delivery thereof. But, since such actual delivery to Hartman & Bro. of the ore in controversy took place prior to the levy of the attachment writ, we are of the opinion that the title passed, and appellant took nothing through his subsequent levy.

We have avoided the discussion, because it would be improper, of the question elucidated in the California decisions referred to, viz.: Whether or not, when the chattel sold, being capable of immediate delivery, is retained by the vendor for a considerable period, but nevertheless is delivered to the vendee before levy of a creditor's writ, the sale is by the retention rendered void as to such creditor.

It appears from the evidence that, though the written contract was executed in the name of Dolman alone, it was in fact entered into on behalf of the partnership of Dolman, Staley & Blackman; also that it was carried out by this partnership. But if counsel's contention were true that, notwithstanding these facts, it could not be regarded in the present action as a partnership contract, appellant receives no benefit therefrom. The transfer to Hartman & Bro. being *bona fide,* and the title having passed by actual delivery before appellant's levy, it is obviously a matter of indifference to him who the real vendors were. Nor can we agree with counsel that the slight variance relating to the firm name of the intervenors, pointed out between the plea of intervention and proofs, could in any way affect a substantial right of appellant. This objection must therefore be disregarded.

It is clear from the evidence that the jury awarded the $50 for injuries to the ore, occasioned by its exposed and

unprotected condition while in the sheriff's hands. It could not have been given as reimbursement of the attorney's fee for the trial in the county court. If, therefore, there was any error in receiving evidence relating to this fee, or in submitting that matter to the jury, it was error without prejudice. The judgment of the district court is affirmed.

*Affirmed.,*