## ALLEN v. STEIGER.

1. REPLEVIN—DISMISSAL WITHOUT PREJUDICE—MEASURE OF DAMAGES.—The institution and voluntary dismissal of a suit for possession and damages without prejudice, is not an adjudication of the right of possession, and damages are recoverable in a second action for the wrongful detention from the time of the original taking.

2. CHATTEL MORTGAGE—DILIGENCE.—When mortgaged chattels are permitted to remain in the possession of the mortgagor until default, the mortgagee must assume control within a reasonable time after maturity of the debt secured. The diligence required depends largely upon the circumstances of the case, and is a question of both law and fact.

3. STATUTE OF FRAUDS—CREDITOR DEFINED.—The term " creditors," as employed in the fourteenth section of the statute of frauds, includes all persons to whom the vendor may be indebted while the property sold remains in his possession or under his control.

4. STATUTE OF FRAUDS—SALE OF CHATTELS WITHOUT DELIVERY, VOID.—Sales of personal property unaccompanied by immediate delivery, and an actual, open and unequivocal change of possession, exclusive of the vendor, are conclusively presumed to be fraudulent. The statute admits of no explanation excusing a non-compliance with any of its provisions, and the good faith of the transaction as a matter of fact is not necessarily involved.

5. BILL OF SALE—RECORD OF NOT AUTHORIZED.—The fact that a bill of sale of chattels has been recorded, there being no law authorizing its record, has of itself no legal significance.

6. CREDITOR—RIGHTS OF.—A *bona fide* creditor may, notwithstanding notice or knowledge of a sale fraudulent and void under the statute, secure his debt by mortgage on the property thus sold.

*Appeal from District Court of Arapahoe County.*

IN 1883 one Vanderweyden, being indebted to appellee Steiger in the sum of $1,300, executed his promissory note therefor, and to secure the same gave a chattel mortgage upon a certain frame building in the city óf Denver, together with "all the furniture in said house." Upon the premises at this time and belonging to Vanderweyden was a piano, which instrument is the subject of the present controversy. The mortgage in question was duly recorded. Thereafter and during the life of this mortgage Vanderweyden gave appellant Allen a bill of sale purporting to convey certain personal property, including the piano in question.

In 1884, at the maturity of the chattel mortgage, Steiger, instead of proceeding to advertise and sell the property under his mortgage, took a new note and new chattel mortgage. The new note was for $2,300.35; the balance represented therein above the original indebtedness was for goods purchased of Steiger from time to time and for which he had levied an attachment upon the property. While the original mortgage simply covered all the furniture, it did not specifically name the piano; the new mortgage did, however, expressly mention the instrument.

The note secured by the new mortgage matured on Saturday the 18th day of April, 1885. The debt remaining unpaid, on April 20th, the Monday following, Steiger took possession of the property under his chattel mortgage. But about ten or eleven o'clock A. M. on the same day, prior to the taking of possession by Steiger, Allen removed the piano from the premises, claiming it by virtue of his bill of sale.

Steiger made demand for the piano and upon refusal insti-

tuted suit in replevin and recovered judgment before a justice of the peace. Allen having given a forthcoming bond and retaining possession of the property under the statute, appealed the case to the county court. In the latter court Steiger's counsel, conceiving that by virtue of the limited jurisdiction of the justice the full value of the piano could not be recovered in the suit, voluntarily asked the court to dismiss the cause without prejudice to his right to institute a new suit. His request was granted, subject, however, to the payment of whatever damages had been occasioned by reason of the institution of the action. These damages were assessed at $3 and the case was dismissed, Steiger to pay the $3 together with costs, " the order and judgment without prejudice to the right of plaintiff to bring another suit against defendant on the same cause of action."

Thereupon a new demand was made upon Allen for the piano and on his refusal to deliver over the same a new suit in replevin was promptly instituted. At the trial in the district court upon the conclusion of the evidence for both parties, the court instructed the jury to return a verdict in favor of plaintiff, and to assess his damages for the wrongful retention from the date of his original taking, viz., April 20th, 1885. To reverse the judgment entered upon the verdict returned in accordance with the above instruction, the present appeal was taken.

Mr. G. M. ALLEN, *pro se.*

Mr. F. A. WILLIAMS, for appellee.

MR. JUSTICE HELM delivered the opinion of the court.

The assignments of error ignored by counsel will not be considered by the court. Upon the arguments presented and the record we deem it only necessary to notice three questions. First, the measure of damages adopted in the district court. Counsel for appellant contends that Steiger, if suc-

cessful on the main issue, could only recover damages for the wrongful detention from the date of the judgment rendered by the county court. In this respect, counsel is mistaken.

The original action was not tried upon its merits and there was no adjudication as to the right of possession. That proceeding was voluntarily dismissed by plaintiff upon his own motion and without prejudice to the institution of another suit upon the same cause of action. But the cause of action thus reserved for another suit included the asserted right to possession together with damages for the wrongful detention from the date of the original taking by Allen. Since Allen had given a forthcoming bond and retained possession of the property, it was not even necessary for the court to adjudge a return thereof to him. The dismissal of the original action left the parties, as to the right of possession and damages for the original taking and detention, precisely as if it had not been brought.

Second: Was Steiger's procedure at the maturity of his second mortgage in compliance with law. Where possession of chattels is, by virtue of the statute and express conditions of the mortgage contract, permitted to remain in the possession of the mortgagor until default, the mortgagee must assume control within a reasonable time after the maturity of the debt secured. If this be not done, the original priority of the mortgagee may be lost. *Chapin v. Whitsett*, 3 Colo. 315. What constitutes proper diligence depends largely upon the circumstances connected with each particular case; but it is conceded to be a question both of law and of fact. "It is for the court to determine what time under the law is reasonable, and for the jury to determine whether the mortgagee reduced the mortgaged chattels to possession within that time." Jones on Chat. Mort. (2d. ed.), sec. 370, and cases cited.

Steiger undoubtedly acted in the present case with adequate promptness. The note falling due on Saturday, its maker had all of that day within which to pay the debt. Steiger was not compelled to take possession on Sunday, and though

the mortgaged chattels were in the city and easily accessible, he was entitled to twenty-four hours or all of Monday, thereafter. The case of *Arnold v. Stock*, 81 Ills. 407, is precisely similar to the one before us in this respect. It was there held that possession taken on Tuesday, Monday being the Fourth of July, was within a reasonable time. Jones on Chat. Mort. (2d. ed), sec. 371. There was no dispute concerning the facts connected with the taking of possession by Steiger. And the court's action in directing the verdict was not in this respect error.

There remains but one question for consideration. When Allen received his bill of sale he placed it upon record, but made no effort whatever to take possession of the piano. The instrument remained in the house of Vanderweyden and exclusively under the control of himself and family. Upwards of three months elapsed from the execution of the bill of sale to the maturity of the first mortgage, and giving of the second mortgage; and an entire year passed after the giving of the second mortgage before the seizure and removal by Allen. Yet Allen does not even claim that during this period he at any time took actual possession or attempted to take such possession of the piano. Section 2027, Mills' Ann. Stats., reads as follows:—

"Every sale made by a vendor of goods and chattels in his possession or under his control and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment or subsequent purchasers in good faith; and this presumption shall be conclusive."

It is unnecessary to analyze or discuss the above statutory provision at length in view of the numerous decisions already rendered thereon by this court. The term "creditors" as therein employed covers all persons to whom the vendor is indebted or becomes indebted while the property sold remains

in his possession or under his control. Sec. 2028, Mills' Ann. Stats. Nor is this word, as counsel contend, limited to judgment creditors alone. *Wallradt v. Brown*, 1 Gilm. 395. The filing of Allen's bill of sale with the clerk and recorder was an act not authorized by law, and in and of itself alone without legal significance. *Bassinger v. Spangler*, 9 Colo. 175; *Sweeney v. Coe*, 12 Colo. 485.

In *Cook v. Mann*, 6 Colo. 21, it is said with reference to section 2027 : " The vendee must take the actual possession and the possession must be open, notorious and unequivocal. * * * The possession must be exclusive of the vendor." In *Ray v. Raymond*, 8 Colo. 467, when speaking of assignments which are by the statute in this respect upon the same footing as sales, the following language is used : " It thus appears that in this state where the assignment is not accompanied by an immediate delivery such fact, in and of itself, constitutes a conclusive presumption of fraud as to creditors of the assignor whose execution or attachment levy precedes the assignee's possession. As stated by another court in construing a similar provision : ' The statute admits of no explanation excusing the delivery.' " Citing *Woods v. Bugbey*, 29 Cala. 467. And in *Finding v. Hartman*, 14 Colo. 596, we say of the statute that : " Its conclusiveness in fixing upon such transactions (sales without immediate delivery and exclusive change of possession) the character of fraud in law incapable of explanation, has been frequently recognized by this court." See also the following cases : *Wilcox v. Jackson*, 7 Colo. 521 ; *Bassinger v. Spangler, supra ; Sweeney v. Coe, supra ; Herr v. D. M. M. Co.*, 13 Colo. 406 ; *Atcheson v. Graham*, 14 Colo. 217 ; *Baur v. Beall*, 14 Colo. 383 ; *Warner v. Carlton*, 22 Ills. 415 ; *Clafborn v. Rosenberg*, 42 Mo. 439 ; *Godchaux v. Mulford*, 26 Cala. 316.

There can be no doubt in view of the foregoing authorities that an alleged sale, under circumstances touching delivery such as are presented in the case at bar, is fraudulent in law and void as to creditors. The good faith of the trans-

action as a matter of fact is not necessarily involved and as to both Allen and Vanderweyden is not disputed.

The fact that Steiger when he took his second mortgage had notice of the existence of the bill of sale to Allen does not, as we shall endeavor to show, affect the legal *status* of the parties. Steiger was justified in assuming the invalidity of that transaction. Being a *bona fide* creditor the presumption of the fraud was in the language of the statute "conclusive," the absence of delivery under the bill of sale incapable of explanation, and the bill of sale itself as to Steiger's lien of no legal force or effect whatever. The statute may seem arbitrary and in particular cases it may operate harshly; but its purpose is undoubtedly wise, and to hold less than the foregoing would be to ignore one of its important provisions.

Had Steiger brought suit and attached the piano with knowledge of the fraudulent sale to Allen, there is no doubt but that his attachment would have held as against the bill of sale. *Lawrence v. Burnham*, 4 Nev. 361; *Goodman v. Buzzell*, 35 Vt. 9. Why might he not with equal propriety take a mortgage with such knowledge? A mortgage would give him a specific lien; his debt is antecedent and *bona fide;* he belongs to the class of creditors for whose protection the statute is enacted; the notice possessed by him in the latter case is precisely the same as in the former, viz., "notice of a sale that in law is void as to him." Why should he be forced to the expense and trouble of a lawsuit when he can secure a lien by contract? If a lien acquired by attachment with notice is good, we think one acquired by mortgage with notice may also be good. Since the proceeding by attachment, however, is adverse and that by mortgage is voluntary, the latter transaction will perhaps be more closely scrutinized than the former for the purpose of detecting fraud and collusion between the vendor and the creditor.

True it is that though a sale be fraudulent as against creditors within the purview of the statute for want of delivery, such creditors are not licensed in the absence of contract or judicial proceedings to seize the property and appropriate

it to the payment of their claims. They must pursue some one of the methods authorized by law. "The expression, that a fraudulent transfer is void as against creditors simply means that the rights of creditors as such are not, with respect to the property, affected by such transfer. But that they may, notwithstanding the transfer, avail themselves of all the remedies for collecting their debts out of the property or its avails which the law has provided in favor of creditors, and that in pursuing those remedies they may treat the property as though the transfer had not been made, that is, as the property of the debtor." Bump on Fraud. Conv. (2d ed.), p. 453. But, as already observed, a creditor is not, in our judgment, of necessity required to bring suit and obtain a specific lien by *attachment* or *execution*. The law gives him other remedies, among which is that of taking a mortgage upon the property of his debtor; and if instead of attaching he induces the debtor to execute such a mortgage for the purposes of securing his antecedent and *bona fide* debt, he is proceeding in one of the ways authorized by law. While his mortgage is not technically a process, it is an instrument which upon failure to comply with its terms confers authority upon him to seize the property and without formal judicial proceedings to ultimately appropriate it or its proceeds to the satisfaction of his debt. We discover no reason upon principle why his specific lien thus obtained should not be given the same force and effect as a specific lien obtained by attachment. *Brown v. Webb*, 20 Ohio St. 389; *Clute v. Steele*, 6 Nev. 335.

In considering the question of a subsequent sale by the vendor, this court held that knowledge by the subsequent purchaser at the time of his purchase of the existence of a prior sale in good faith binding as between the vendor and vendee, where possession was temporarily left with the vendor, rendered the second sale subject to the rights of the prior purchaser. The view thus announced was, however, predicated upon a provision of the statute of frauds subsequent to that under consideration which deals only with purchasers

and limits the benefit of the statute to purchasers in good faith and for valuable consideration, and which expressly excepts a purchaser with notice of the fraudulent intent of the vendor. *McKee v. Bassick M. Co.*, 8 Colo. 392.

Counsel for appellant discuss Steiger's rights as if he were an absolute purchaser and therefore within the purview of the last foregoing decision. To this view we respond: *First*, that there is no provision of the statute relating to creditors corresponding to the one upon which that decision was based: *Second*, the term " good faith," employed in said section 2027, is limited to subsequent purchasers. Undoubtedly the creditor's debt must itself be *bona fide ;* but when the good faith and validity of the debt are unquestioned, the conclusive presumption of fraud as to creditors attaches to a sale unaccompanied by immediate possession. And *third*, a mortgage of personal property regularly executed is defined to be " A conditional sale of it (the property) as security for the payment of a debt or the performance of some other obligation." Jones on Chat. Mort. (2d. ed.), sec. 1. The phrase " subsequent purchasers," as used in the statute under consideration, does not include a *bona fide* creditor who by chattel mortgage obtains a specific lien upon property for the purpose of securing payment of his antecedent debt.

It is not necessary to consider or rely upon the first mortgage described in the record before us; for since the attempted sale to Allen was unaccompanied by delivery, Steiger's second mortgage gave him a superior lien upon the property; and as he acted with sufficient diligence in attempting to reduce the same to possession on maturity of the mortgage the taking of the piano by Allen was as against him unlawful.

The judgment of the court below is affirmed.

*Affirmed.*

MR. JUSTICE ELLIOTT, having as district judge heard the cause in the court below, did not participate in this decision.