SPRINGER, APPELLANT, v. KREEGER, APPELLEE.

1. STATUTE OF FRAUDS.
Every sale made by a vendor of chattels in his possession, or under his control, unless the same be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things sold, is conclusively presumed to be fraudulent and void.

2. SAME.
The vendee must take actual possession, and the possession must be open, notorious and unequivocal, so as to apprise the community, or those accustomed to deal with the party that the goods have changed hands and that the title has passed.

3. SAME.
When the subject of the sale does not reasonably admit of an actual delivery, it is sufficient if the vendee assume actual control and dominion of the property so as to reasonably indicate to all concerned the change of ownership.

4. EVIDENCE.
Where the issue is as to whether an actual change of possession of the goods took place, the books of the warehouse in which they were stored at and after the time of the sale are admissible to show whether or not there has been such a change.

*Appeal from the District Court of Las Animas County.*

Messrs. NORTHCUTT & FRANKS, for appellant.

Mr. BO SWEENEY and Mr. JOHN A. GORDON, for appellee.

REED, J., delivered the opinion of the court.

In December, 1890, The Acme Fence Company doing business in New Mexico ordered a lot of wire from the St. Louis Wire Mill Company. One hundred eighty-five coils, which, with the freight added, were of the value of $869.50, were shipped by the Wire Mill Company, consigned to The Acme Fence Company at Trinidad, Colorado. A draft was drawn for the amount by the shipper upon the consignee, which remained in the hands of the bankers for collection until March 9, 1891.

The wire remained in the car and in possession of the railroad company until that date, and demurrage was charged by the railroad company, amounting to $105. Charles Springer (appellant) was a member of The Acme Fence Company. The company was embarrassed, had no money. On that date Springer advanced the money and took up the draft. Harry Wigham, vice president and treasurer of the Acme corporation, went to Trinidad, and with money furnished by Springer paid the $105 demurrage and had the wire stored in the warehouse of The Brown-Nanzanares Company, where it remained. Subsequently The Brown-Nanzanares Company was succeeded by The Forbes Mercantile Company in the same building, and the wire remained in its custody.

The Acme Company still being embarrassed, and indebted to Springer for money advanced, including the amount paid for the wire in store, in the sum of $6,223.39, Springer brought suit against it and obtained a judgment for that sum. The judgment remaining unpaid, The Acme Company, on the 23d day of May, 1891, conveyed to Springer all its property and assets, specifically including the wire in store; such conveyance and sale to become absolute if the company failed to pay and redeem within fifteen days. The company failed to pay within the time specified.

Appellee was sheriff of Las Animas county. On August 27, 1891, The Trinidad Water Works Company and P. J. McMartin commenced suit in Las Animas county by attachments against The Acme Fence Company, which were levied upon the wire in store, and afterwards judgments were obtained, and appellee as sheriff was proceeding to sell the wire in satisfaction, when appellant brought this suit in replevin and took the property. The trial was had to the court without a jury, the only question tried being the title to the wire. The other facts were covered by stipulation. The court found for the defendant (appellee), and the plaintiff prosecuted an appeal to this court.

Except the general assignment that the court erred in finding for the defendant, the only errors assigned are the admis-

sions by the court of the evidence of Forbes, president of The Forbes Mercantile Company, successor to The Brown-Nanzanares Company, of conversations with the officers of the latter company in regard to the ownership of the wire in store at the time of the transfer, and the admission in evidence of the books of the Forbes Company to show how it was held by it and in whose name as owner; the testimony establishing the fact that the wire was stored in the name of The Acme Fence Company with The Brown-Nanzanares Company, and as such was transferred to and held by its successor, the Forbes Company.

It was contended upon the trial and is urged in argument that appellant acquired title to the wire in March by payment of the draft of the St. Louis Company, the payment of demurrage and the acts of Wigham, vice president and treasurer of the Acme Company. Such contention cannot prevail. The goods were ordered by and consigned to the Acme Company, the draft for the purchase and freight was drawn upon the company. The company was embarrassed; the draft remained three or four months unpaid in the hands of the collecting agents, while the goods remained in store or possession of the railroad company, accumulating demurrage charges. At this point appellant came forward, took up the draft upon the company, paid the demurrage, and the goods were placed in store by Wigham, the vice president and treasurer. As to whether or not the goods were stored in the name of appellant, the evidence is unsatisfactory. Wigham testifies that they were, while the warehouse books show they were not. No warehouse receipt was taken in the name of appellant. But we deem this inquiry unimportant. It is said in argument "that plaintiff, after some delay, paid said draft upon an agreement that said wire should be taken and held by plaintiff until he was repaid the amount of the draft." We can find no such agreement in the evidence of record. If such agreement was made, it was of no legal significance to third parties who had no notice of it. The money appears to have been advanced like other moneys to the company,

paid to and disbursed by the executive officer of the company in its business. No corporate action was taken, no transfer of the goods made. Appellant could not, by the voluntary advance of money and instructions to Wigham, change the ownership. One man cannot make a bargain of sale of the property of another to himself; and even had Wigham directed the goods to be stored in the name of appellant, without further evidence of change of ownership, the warehousemen were justified in disregarding it. That he did not, by any act of the corporation, become the owner of the goods until about the 7th of June is shown by the conveyance, subject to defeasance by payment within fifteen days, made on the 23d of May. Prior to that time the transactions appear to have been confined to money advanced the company, until it aggregated over $6,000. After default in payment and the expiration of fifteen days, appellant might have become the legal owner by reducing the goods to his possession. Had there been a warehouse receipt, constructive possession could have been effected by its transfer with notice to warehousemen, without a receipt, by the exhibition of his title and a transfer upon the books of the warehouse. Neither was done. Taking the testimony of appellant as to what was done to change the possession, all we can find is the following: "I came here to Trinidad on my way to Catskill in June, shortly after the fifteen days had expired, as mentioned in that bill of sale, and inquired from a clerk in Brown-Nanzanares's establishment about this wire, and I told him I would soon want the wire shipped to my factory at Catskill and that I would then pay the charges on it."

Sec. 14 of our Statute of Frauds is as follows:

" Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making

such assignment, or subsequent purchasers in good faith, and this presumption shall be conclusive."

In regard to the construction and effect of this section, as said by ELBERT, C. J., in *Cook v. Mann*, 6 Colo. 21, "the books are full of decisions." In that case it was said: "The vendee must take the actual possession, and the possession must be open, notorious and unequivocal, such as to apprise the community, or those who are accustomed to deal with the party, that the goods have changed hands and that the title has passed out of the seller and into the purchaser. When the subject of the sale does not reasonably admit of an actual delivery, it is sufficient if the vendee assume the control and dominion of the property, so as reasonably to indicate, to all concerned, the change of ownership."

That the decision has since been followed, see *Wilcox v Jackson*, 7 Colo. 521; *Bassinger v. Spangler*, 9 Colo. 175 *Sweeney v. Coe*, 12 Colo. 485; *Herr v. Denver, M. & M. Co.*, 13 Colo. 406; *Atchison v. Graham*, 14 Colo. 217; *Felt v. Cleghorn*, 2 Colo. App. 4.

It is clear, even from the evidence of appellant, that there was no change of possession either actual or constructive, nor compliance with the requirements of the statute before the levying of the attachments, and as to creditors the sale was void.

The evidence of Forbes, president of The Forbes Mercantile Company, in whose possession the goods were, also the books of the concern, were admissible in evidence upon the trial. The question being tried was whether an actual change of possession of the goods as required by statute had taken place, and, though perhaps not conclusive, the testimony was competent to show whether or not there had been a change of the possession.

The judgment must be affirmed.

*Affirmed.*