AUTREY v. BOWEN.

1. STATUTE OF FRAUDS—POSSESSION.
A sale of chattels which is not accompanied by an immediate transfer and change of possession is void as against existing creditors of the vendor. The rights of parties are not affected by any transfer which may be made subsequent to the time of the sale, even though it may occur before an actual levy on the goods by creditors.

2. AMENDMENTS.
Under the circumstances of this case, the plaintiff's motion for leave to amend his *ad damnum* should have been allowed.

*Error to the District Court of Boulder County.*

Mr. S. A. GIFFIN and Mr. GEO. S. ADAMS, for plaintiff in error.

Mr. H. C. HENDERSON and Mr. GEO. B. CAMPBELL, for defendant in error.

BISSELL, J., delivered the opinion of the court.

This suit grew out of a controversy between the creditors of one W. M. Wolcott, and Albert E. Bowen, who claimed to be the owner of the property which the creditors sought to subject to the payment of their debts. In February, 1891, Wolcott was the owner of 210 sacks of concentrates, which were in a mill he was operating in Boulder county, called the "Corning Tunnel Mill." The mill was located about twelve miles from Boulder, and about the same distance

from the hotel, which was carried on by Bowen. On the 28th, Wolcott was indebted to Bowen for board for himself and family in the sum of about $128. In order to pay that debt, and to secure Bowen for the indebtedness which might accrue from his continued stay in the hotel, to the extent of the balance of the assumed value of the concentrates, to wit, $162, Wolcott executed a bill of sale, reciting a consideration of $300, whereby he attempted to sell and transfer to Bowen all his title to the concentrates which were at the mill. At the date of the execution of the transfer, Wolcott was indebted to one Pierson, who commenced a suit on the 27th of February, by attachment, which process was subsequently levied on the concentrates. At the same time Wolcott was indebted to one Feeny, in the sum of $216.60, and on that day Feeny commenced a suit in the county court against his debtor, and got judgment on the 14th of March following, on which date an execution was placed in the hands of the sheriff for service. There is no controversy whatever about any of the facts on which judgment was entered. The parties filed a stipulation and an agreement concerning them, and on this statement of facts the court rendered judgment in favor of the appellee, Bowen. What has been stated is an extract from the statement, and the other facts which will be referred to are compiled from the same source. Bowen made no attempt whatever to reduce the concentrates to possession, but they were left at the mill, which was in the custody and control of Wolcott, who owned or run it. On the 16th and 17th of March, the sheriff levied this attachment and the execution on the concentrates and took them into his possession. At that time part of them had been hauled from the mill and placed in a car at Boulder and a part of them were in the process of transit, though at the date of the delivery of the process to the sheriff, to wit, the 14th, most of them were still at the mill. Thirty-five sacks had been hauled on that date. At the time of the transaction between Bowen and Wolcott, when the bill of sale was executed, Bowen made an agreement

with the teamster who had been hauling stuff from the mill to take the concentrates and deliver them at the railroad when the road should get in good condition. No attempt to reduce the chattels to possession, other than what might be said to result from the execution of the transfer and the making of the contract with the teamster, was ever made by Bowen prior to the commencement of the hauling, on the 14th of March. The only excuse which the statement of facts exhibits for the failure to reduce the chattels to possession is in the second paragraph, and is, "that the roads, by reason of the snow and mud, between Boulder and said mill, were in very bad condition and little or no hauling was done." After the sheriff had made his levies, Bowen demanded possession, which was refused, and he thereupon brought replevin. According to the averments of his original complaint, the value of the ore was put at $350. The defendants took issue on all material allegations of the complaint and the cause ultimately went to trial on the agreed statement. Prior to the hearing, the plaintiff asked leave to amend the *ad damnum* and supported his application by an affidavit which substantially set up that his information as to value was derived from the vendor and he supposed it would be as put. He also stated a subsequent shipment to the smelter, showed the gross value to be only $106.16, and the actual value, after deducting freight and smelter charges, to be $45.00. This leave was refused him, and when the case was tried the plaintiff had judgment that he retain possession of the property and recover his costs.

We are entirely relieved from any difficulty as to the matters of fact involved, because the court did not render its judgment on any conclusions of its own respecting them, nor was the question at issue submitted to a jury. The judgment is simply the court's conclusion of law respecting the rights of the parties, and the only thing for our determination is whether, on the facts as stated, the plaintiff was entitled to judgment. We do not agree with the *nisi prius* court. Under our statute of frauds any sale of chattels

which is not accompanied by an immediate change and transfer of possession is absolutely void as against any creditors of the vendor then existing. This has been again and again declared by both the appellate courts of this state. It is likewise settled by repeated adjudications that the rights of the parties are not at all affected by any transfer which may be made subsequent to the time of the sale, even though it may occur before any actual levy on the goods by creditors, who have sued out attachments or have issued executions.

A long line of cases in this state and in other jurisdictions settle both propositions adversely to the appellee. *Cook v. Mann,* 6 Colo. 21; *Ray v. Raymond,* 8 Colo. 467; *Bassinger v. Spangler,* 9 Colo. 175; *Sweeney v. Coe et al.,* 12 Colo. 485; *Atchison v. Graham,* 14 Colo. 217; *Allen v. Steiger,* 17 Colo. 552; *Felt v. Cleghorn,* 2 Colo. App. 4; *Burchinell v. Weinberger,* 4 Colo. App. 6; *Chenery v. Palmer,* 6 Cal. 119; *Watson v. Rodgers,* 53 Cal. 401; *Edwards v. Sonoma Valley Bank,* 59 Cal. 148; *Dean v. Walkenhorst,* 64 Cal. 78; *Woods v. Bugbey,* 29 Cal. 466; *Gardenier v. Tubbs et al.,* 21 Wend. 169.

These authorities dispose of the entire controversy, and their complete application to the facts of this case render any restatement or analysis of the doctrine totally unnecessary. The only possible question about the matter is whether the goods were of the character and in the situation which rendered the technical implication of a transfer by reason of an execution of a bill of sale sufficient to take the case out of the statute. We are unable to find in the statement of facts any matters which would establish an implied possession because of the execution and delivery of the bill of sale. It is true the articles were bulky, but they only consisted of 210 sacks of ore of the weight of one hundred pounds each. There is no sort of a physical impossibility to take that number of sacks of ore into possession within a very reasonable time after the transfer. There was no attempt to prove they could not have been removed from the mill and put into another warehouse or another place for storage, which was

not under the control and management of the vendor. There is likewise nothing to show that the sacks of ore were segregated from any other sacks in the mill, but so far as can be discovered Wolcott remained in absolute possession after the sale. Under the evidence the ore might have been hauled from the mill to the railroad immediately on the execution of the transfer. It is true the statement is "the roads were bad and little or no hauling was done." From this we have a right to infer some hauling was done, and that it was not impossible. It is this element of insuperable difficulty or impracticability which renders the situation an excuse for a failure to reduce chattels to possession. No impossibility is shown, nor does any impracticability appear, but so far as we are advised by what the parties agree, it would have been entirely feasible for the vendee to have taken immediate possession, removed them from Wolcott's custody and assumed the actual control which the statute requires. Unless some other facts be shown than what appear from the present agreement, the appellee, Bowen, was not entitled to a judgment for the return of the property.

Since this case must go back for another trial, and the judgment must ultimately be against the appellee for the return of the property or its value, we must express our opinion concerning the action of the court in refusing the plaintiff the right to amend his *ad damnum* and show the actual value of the property. Had the case been tried in the usual way on proof, a judgment would necessarily have been entered according to the established value of the property, and Bowen would have been adjudged to return it or to pay what the jury might find was the true and actual value. Since it was heard on the agreed statement, no evidence was introduced concerning it, and the plaintiff was apparently bound by what he had alleged in his pleadings. If he was unadvised, as would appear from his affidavit respecting the matter, he should not be concluded by his allegations, but should have the opportunity to amend his complaint in that particular, or to offer proof on the subject,

so that the ultimate judgment against him should not exceed the proved value of the mineral. Evidence should either be taken on that question, or he should be allowed to amend his complaint, so that injustice might not be done him in this particular.

Since the conclusions of the trial court do not concur with our views of the law, this case must be reversed and remanded for further proceedings in conformity with this opinion.

*Reversed.*