[No. 2187.]

WILLIS v. ROBERTS.

1. **Sales—Personal Property—Possession—Statute of Frauds.**

To sustain a sale of personal property as against the creditors of the vendor the possession taken and retained by the vendee must be actual, open, notorious, unequivocal and exclusive. There must be no apparent possession left in the vendor. And it is immaterial whether or not the sale was bona fide or whether or not creditors had knowledge of it, unless it was followed by the required change of possession.

2. **Same—Evidence.**

Evidence examined and held not sufficient to constitute such change of possession as will sustain a sale of personal property as against creditors of the vendor.

*Appeal from the County Court of Lake County.*

Messrs. PHELPS & PENDERY and Mr. W. H. HAR-RISON, for appellant.

Mr. L. R. THOMAS and Mr. F. E. PURPLE, for appellee.

THOMSON, J.

Aaron Roberts sued Chauncy Callaway before a justice of the peace of Lake county to recover the amount of an indebtedness due him from the defendant, and caused a writ of attachment to be issued in the suit and levied upon two sets of harness, one wagon, four mules, one buggy, one cow and one heifer, as the property of the defendant. Louie Willis, a daughter of the defendant, interposed a petition in intervention, claiming all the property levied upon as belonging to her. The decision of the justice was against the intervenor, and she appealed to the county court, whose judgment being likewise against her, she appealed to this court.

The intervenor testified that she was the owner of the property attached; that she obtained it from her father, the defendant, in August, 1897, at Manitou, for money she had loaned him a year before; that he brought the mules from Nebraska to Manitou, and showed them to her in his stable, and she accepted them for the money owing to her; that they were left in the stable, but she took charge of them and fed them for two or three weeks while he was away; that when the family left Manitou for Twin Lakes, she led the mules into the cars, while her father was loading the other things; that when the mules were taken from the cars, they were driven to Twin Lakes by herself, her father and her mother—part of the time by one, and part of the time by the other—and turned into a pasture belonging to a Mr. Harlan; that the plaintiff was then working for her father, and knew that she had purchased the mules,

and that her father had turned them over to her; that at Twin Lakes the plaintiff was employed by her father to build a cabin for the family to live in, and did so; that after the cabin was built, the plaintiff still remained, did chores, helped around the house, attended to the stock, and drove the team when there was anything for it to do; and that when the constable came to attach the property, she told him it was hers.

The plaintiff testified that he was employed by the defendant to build a cabin at Twin Lakes; that two of the mules came on the train, and two were driven up by the intervenor and her father and mother; that the stock was put in the Harlan pasture, which he had engaged; that the defendant, upon leaving Twin Lakes, put the horses and mules into his charge, and told him to hire the teams, and make what he could; that he paid the money he received to the defendant's wife; that he might have given the intervenor five dollars, but if so, it was for her mother.

Mrs. Callaway testified that the plaintiff paid the money sometimes to Mrs. Willis; and that when she, Mrs. Callaway, received the money, she immediately turned it over to Mrs. Willis.

The sale was possibly good as between the intervenor and her father; but the plaintiff was an attaching creditor of the vendor, and the question is whether it was good as to him. It is provided by our statute of frauds that every sale made by a vendor of goods and chattels in his possession, or under his control, unless the same be accompanied by immediate delivery, and be followed by an actual and continued change of possession, shall be conclusively presumed to be fraudulent and void as against the creditors of the vendor.—Mills' Ann. Stats., sec. 2027.

The possession taken by the vendee must be actual, open, notorious, unequivocal and exclusive. There must be no apparent possession left in the

vendor. Whether the transaction was *bona fide,* or whether creditors had knowledge of it, is wholly immaterial. Unless the required change takes place, the sale is void as to them.—*Bassinger v. Spangler,* 9 Colo. 175; *Allen v. Steiger,* 17 Colo. 552; *Lloyd v. Williams,* 6 Colo. App. 157.

There is in the case before us no evidence that the actual possession of any of the property in controversy was ever changed. As to what was done with the property outside of the mules, not a word was said. Respecting the mules, the intervenor testified that she took charge of them; but she also said that they were left in her father's stable, and that what she did, in relation to them, consisted in watering and feeding them for two or three weeks while her father was away. Not having been removed from her father's stable, they remained in his possession; and the fact that during his temporary absence she watered and fed them, is without significance. Her leading the mules to the cars, while her father loaded the other property, and her alternating with her father and mother in driving them, were, on their face, only acts of assistance to her father in taking them to their destination. The evidence is uncontradicted that after the mules arrived at Twin Lakes, they were placed by the defendant in charge of the plaintiff, who, in obedience to the defendant's instructions, let them out for hire. And it is immaterial to whom the plaintiff paid the money he received. As against the defendant's creditors, the possession of the mules which the plaintiff had, was the possession of the defendant.

We are unable to find in the evidence a semblance of compliance with the requirements of the statute, and the judgment must be affirmed.

*Affirmed.*